0001

The CITADEL DEVELOPMENT FOUNDATION, Court of Common Pleas County of Greenville, Appellant, v. COUNTY OF GREENVILLE and Virginia P. Whitmire, as County Treasurer, County of Greenville, Respondents; and The CITADEL DEVELOPMENT FOUNDATION, Appellant, v. The SOUTH CAROLINA TAX COMMISSION and the County of Greenville, Respondents; and The CITADEL DEVELOPMENT FOUNDATION, Appellant, v. The CITY OF GREENVILLE and Clint Thompson, as Finance Administrator and/or Treasurer of the City of Greenville, Respondents.

(308 S. E. (2d) 797)

Court of Appeals

*John C. von Lehe*, Greenville, *Wallace G. Holland, Young, Clement, Rivers & Tisdale*, Charleston, *for appellant.*

*Joseph H. Earle, Jr.*, Greenville, *Atty. Gen. Travis T. Medlock, Retired Atty. Gen. Daniel R. McLeod, Deputy Atty. Gen., Joe L. Allen, Jr.*, Columbia, *Stephen A. Kern*, Greenville, *for respondents.*

Oct. 31, 1983.

SANDERS, Chief Judge:

This is a consolidated appeal from separate actions by appellant, The Citadel Development Foundation, against respondents, The City and County of Greenville, South Carolina, for recovery of certain taxes paid on property commonly known as the Daniel Building. An appeal from the circuit court order denying recovery of the taxes paid and affirming the South Carolina Tax Commission's denial of tax exempt status for the Building is also consolidated in this appeal. We agree with the circuit judge and affirm.

The facts are essentially undisputed. The Citadel Develop-

ment Foundation is an eleemosynary corporation which receives and expends funds in ways designed to benefit The Citadel, the Military College of South Carolina. A provision of the charter of the Foundation requires that upon dissolution, its assets will be transferred to some other organization, "exempt under Section 501(c)(3) of the Internal Revenue Code or to the Federal, State or local government." There is, however, no requirement that these assets be transferred to an organization which exists to benefit The Citadel or to The Citadel itself. Foundation offices are located in Citadel facilities and the Vice-President of Development for The Citadel supervises the Executive Director of the Foundation. Several Trustees of The Citadel are also Trustees of the Foundation. Employees of the Foundation are paid by The Citadel and use various supplies and equipment obtained from The Citadel. However, the Foundation is an entity separate from The Citadel and itself has none of the usual characteristics of a school, college or other institution of learning.

In 1979 the Daniel Building was given to the Foundation by the Daniel Foundation. The property was not deeded in trust for The Citadel. The Foundation then owned the Building for the 1979 and 1980 tax years, but chose not to occupy it, and instead leased it to Daniel International Corporation. The Building was later sold, without action by The Citadel Board of Trustees, to Daniel International for $16,000,000.

City and County taxes on the Building were paid under protest by the Foundation. The Tax Commission determined the Foundation is not exempt as a school, college or institution of learning. The circuit judge affirmed that conclusion of law, thereby denying recovery of taxes paid.

The Foundation claims the Building is exempt from ad valorem taxation under § 12-37-220 of the 1976 Code, as amended, which provides in part as follows:

> A. Pursuant to the provisions of Section 3 of Article X of the State Constitution, there shall be exempt from ad valorem taxation:
>
> (1) all property of the state, counties, municipalities, school districts, Water and Sewer Authorities and other political subdivisions, if the property is used exclusively for public purposes, and it shall be the duty of the Tax Commission and county assessor to determine whether

such property is used exclusively for public purposes;

(2) all property of all schools, colleges and other institutions of learning and all charitable institutions in the nature of hospitals and institutions caring for the infirmed, the handicapped, the aged, children and indigent persons, except where the profits of such institutions are applied to private use;

(3) all property of all public libraries, churches, parsonages and burying grounds;

(4) all property of all charitable trusts and foundations used exclusively for charitable and public purposes . . .

The exemptions provided in items (3) and (4) for real property shall not extend beyond the buildings and premises actually occupied by the owners of such real property.

'The Foundation concedes subsection 4 is not applicable because it does not occupy the Building. The Foundation also contends it is not a charitable trust or foundation, despite its name. Instead, the Foundation seeks to bring itself within the language of subsection 2 as a school, college or other institution of learning by characterizing itself as an arm of The Citadel. Although the Foundation had legal title to the Building during the tax years in question, it argues beneficial ownership was in The Citadel.

An action for recovery of taxes paid under protest pursuant to § 12-47-220 of the 1976 Code is an action at law. *Elmwood Cemetery Association v. Wasson*, 253 S. C. 76, 169 S. E. (2d) 148 (1969). The Administrative Procedures Act provides for reversal or modification of agency conclusions when affected by error of law. S. C. Code Ann. § 1-23-380(g) (Supp. 1982). Therefore, the standard of review applicable to the single issue presented by the consolidated appeals at hand is whether an error of law has been committed.

The South Carolina Constitution of 1868, Article IX, Section 5 and the Constitution of 1895, Article X, Section 4, both contained the exemption found in § 12-37-220(A)(2), but provided the exemption did not extend beyond buildings and premises actually occupied by the institution of learning. *See also Trustees of Wofford College v. City of Spartanburg*, 201 S. C. 315, 23 S. E. (2d) 9 (1942). Constitutional revisions of 1977

now found in Article X, Section 3(b), and 1978 amendments to § 12-37-220 deleted the proviso requiring occupancy as it applied to schools, colleges and other institutions of learning. However, these revisions and amendments only avail the Foundation if it is, in fact, such an institution.

In addressing this question, we are cognizant that language creating a tax exemption is not liberally construed in favor of the taxpayer claiming exemption. *York County Fair Association, Inc. v. South Carolina Tax Commission,* 249 S. C. 337, 154 S. E. (2d) 361 (1967). This is not only the law of this State as enuniciated by our Supreme Court in the *York County* case, it is sound public policy as well. Unhappily, this Court is not endowed with the power to reduce taxes. Anytime certain property is made exempt from its share of overall taxes levied, then the owners of other property inevitably have their share of the tax burden increased to make up the difference.[1] In other words, as applied to the case at hand, if no taxes are paid on the Daniel Building, other property owners in Greenville will become unwitting (and perhaps unwilling) contributors to the Foundation by having to pay for the fire, police and other services of government delivered to this building.

The General Assembly, acting pursuant to the Constitution of this State, has granted certain limited tax exemptions, presumably for sound public purposes. Among these is the exemption for institutions of learning of which the Foundation seeks here to avail itself. However, the record fails to convince us that the Foundation's relationship with The Citadel renders it an institution of learning in its own right. As previously observed, it has none of the usual characteristics of such an institution.

The argument of beneficial ownership is tenuous at best. Even assuming that beneficial ownership is a valid concept upon which to claim tax exemption (which is by no means clear as a matter of law) there has been no showing under the facts here that such ownership has been established in The Citadel. The deed by which the Foundation acquired the Building is not a deed of trust on its face. The

---

[1] This principle is sometimes expressed as the first law of economics, to wit: "There's no such thing as a free lunch." See M. Friedman, book by this title (1975).

Foundation argues merely that it exists to benefit The Citadel. It is one thing to say the Foundation benefits The Citadel, but quite another to claim The Citadel is the beneficial owner of Foundation property.

*Montgomery v. Wyman,* 130 Ill. 17, 22 N. E. 845 (1889) and *Norton's Ex'rs, v. City of Louisville,* 118 Ky. 836, 82 S. W. 621 (1904), cited by the Foundation for the proposition that beneficial ownership governs the determination of taxation questions, are distinguishable. *Norton* involved property held by trustees as subject of an actual trust, the proceeds of which were to go to a tax exempt organization. Although no beneficial ownership was found in *Wyman,* language in the opinion would also require title to be held in trust for the benefit of the institution of learning.

Contrary to the Foundation's reading of *Engineering Society of Detroit v. Detroit,* 308 Mich. 539, 14 N. W. (2d) 79 (1944), which it also cites, tax exempt status was denied there even though legal title was held in trust for the society. The society claimed exemption, but failed to prove it was an educational or scientific institution occupying the property solely for those purposes as required by the law of Michigan.

*State v. Bareis,* 257 Wis. 497, 44 N. W. (2d) 259 (1950), also advanced by the Foundation, determined property held for the benefit of the University of Wisconsin by a building corporation created by regents of the school was exempt as property of the state (there being no statutory requirement of exclusive use for public purposes in Wisconsin). The Foundation here specifically disclaims any exemption for the Building as property of the State.

In *City of Ann Arbor v. University Cellar, Inc.,* 65 Mich. App. 512, 237 N. W. (2d) 535 (1975), the tax exemption granted a nonprofit bookstore incorporated at the direction of university regents was reversed on appeal at 401 Mich. 279, 258 N. W. (2d) 1 (1977). There, as here, the school did not maintain managerial and operational control of the board of directors of the organization seeking exemption.

For these reasons, we hold the Daniel Building is not exempt from ad valorem taxation under § 12-37-220(A)(2). Finding no error of law, the order of the circuit judge is

Affirmed.

GARDNER and BELL, JJ., concur.