527 S.E.2d 105

**The STATE of South Carolina, Respondent,**

v.

**Robert Joseph QUATTLEBAUM, Appellant.**

**No. 25051.**

Supreme Court of South Carolina.

Heard Nov. 30, 1999.

Decided Jan. 24, 2000.

442

Assistant Appellate Defender Robert M. Dudek, of South Carolina Office of Appellate Defense, of Columbia; and Joseph M. McCulloch, Jr., of Columbia, for appellant.

Attorney General Charles M. Condon, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Donald J. Zelenka, Assistant Attorney General Robert E. Bogan, of Office of the Attorney General, of Columbia; and Solicitor Donald V. Myers, of Lexington, for respondent.

BURNETT, Justice:

Appellant was convicted of murder, first degree burglary, armed robbery, assault and battery with intent to kill, and possession of a firearm during the commission of a violent crime. He was sentenced to death. We reverse.

## FACTS

Appellant voluntarily presented himself to the Lexington County Sheriff's Department on May 29, 1995, for questioning concerning his involvement in a murder, armed robbery, and assault which took place earlier that day. He agreed to take a polygraph examination. After administering the examination, the detective left appellant in the polygraph room and returned to his own office. A video camera in the polygraph room fed into the detective's office. Appellant's attorney joined appellant in the polygraph room. While appellant and his attorney conferred, several sheriff's officers and a deputy solicitor were present in the detective's office where the privileged conversation between appellant and his attorney was monitored and recorded. Several of the detectives present testified at appellant's trial that when one of the detectives asked the deputy solicitor, "Can we use this?," the deputy solicitor replied, "I'm not sure, but if we do, it will be an interesting Supreme Court case." The fact of the eavesdropping and the existence of the videotape were not revealed to appellant or his attorneys for two years.

Appellant was subsequently arrested and indicted. While in jail awaiting trial, appellant made incriminating statements to a cellmate who testified against him at trial.

The deputy solicitor who participated in the eavesdropping was an active participant in appellant's trial and gave the closing argument in the guilt phase of the trial. The jury convicted appellant and recommended a sentence of death. This appeal follows.

## ISSUES

I. Did the trial judge err in refusing to disqualify the Eleventh Circuit Solicitor's Office from prosecuting appellant?

A. Was appellant's Sixth Amendment right to counsel violated?

B. Should the solicitor's office have been disqualified to protect the integrity of the judicial system?

II. Did the trial judge err in refusing to allow appellant to impeach law enforcement witnesses with their participation in the videotaping?

III. Did the trial judge err in ruling appellant's cellmate was not a government agent at the time appellant made incriminating statements to him?

IV. Did the trial judge err in refusing to allow appellant to call the solicitor and deputy solicitor to testify?

V. Did the trial judge err in admitting evidence drugs were mailed to appellant at the detention center?

## DISCUSSION

### I. Did the trial judge err in refusing to disqualify the Eleventh Circuit Solicitor's Office from prosecuting appellant?

Appellant contends the trial court erred in refusing to disqualify the solicitor's office from prosecuting him after a deputy solicitor participated in the videotaping of appellant's conversation with his attorney. Appellant makes two arguments for disqualification. First, he argues his Sixth Amendment right to counsel[1] was violated when investigators and

---

1. "In all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defense." U.S. CONST. amend. VI.

the deputy solicitor eavesdropped on his conversation with his attorney, and disqualification of the solicitor's office is an appropriate remedy for the violation. Second, he argues the solicitor's office should have been disqualified because the deputy solicitor's misconduct and his subsequent participation in appellant's trial was an affront to the integrity of the judicial system. We agree with each of these contentions.

### A. Was appellant's Sixth Amendment right to counsel violated?

■ Appellant argues his Sixth Amendment right to counsel was violated and the solicitor's office should have been disqualified as a result. We agree.[2]

■ The Sixth Amendment right to counsel protects the integrity of the adversarial system of criminal justice by ensuring that all persons accused of crimes have access to effective assistance of counsel for their defense. The right is grounded in "the presumed inability of a defendant to make informed choices about the preparation and conduct of his defense." *United States v. Levy*, 577 F.2d 200, 209 (3d Cir.1978). Although the Sixth Amendment right to counsel is distinguishable from the attorney-client privilege, the two concepts overlap in many ways. The right to counsel would be meaningless without the protection of free and open communication between client and counsel. *See id.* The United States Supreme Court has noted that "conferences between counsel and accused ... sometimes partake of the inviolable character of the confessional." *Powell v. Alabama*, 287 U.S. 45, 61, 53 S.Ct. 55, 77 L.Ed. 158 (1932).

In 1932, the United States Supreme Court declared the Sixth Amendment applicable to the states through the due process clause of the Fourteenth Amendment. *Id.* However,

---

2. The State asserts appellant's Sixth Amendment rights had not yet attached at the time of the eavesdropping and tape recording of appellant's conversation with his attorney. *See State v. George,* 323 S.C. 496, 508–09, 476 S.E.2d 903, 911 (1996) (Sixth Amendment right to counsel in judicial proceedings does not attach until adversarial proceedings have been initiated). This argument ignores the two years during which the State continued adversarial proceedings against appellant while failing to disclose the fact of the eavesdropping and the existence of the videotape. In fact, the occurrence of the videotaping was denied at appellant's preliminary hearing.

South Carolina had recognized the fundamental nature of the right to counsel as early as 1731. *See id.* ("[I]n South Carolina, the original Constitution of 1776 did not contain the provision as to counsel, but it was provided as early as 1731 that every person charged with treason, murder, felony, or other capital offense, should be admitted to make full defense by counsel learned in the law.") (citing Act of August 20, 1731, § XLIII, Grimke, S. Car. Pub.Laws, 1682–1790, p. 130).

This is, fortunately, a case of first impression in South Carolina. Never before have we addressed a case involving deliberate prosecutorial intrusion into a privileged conversation between a criminal defendant and his attorney. Federal jurisprudence in this area is decidedly ambiguous, and we have found no precedent dealing with a prosecutor deliberately eavesdropping on an accused and his attorney.

In the 1950s and 1960s, when first faced with cases involving government eavesdropping on attorney-client conversations, federal courts refused to examine either the government's motives or the degree of prejudice to the defendant. Note, *Government Intrusions Into the Defense Camp: Undermining the Right to Counsel,* 97 Harv.L.Rev. 1143, 1146 (1984). Over time, the rule that began to emerge would have required either a showing of deliberate prosecutorial misconduct or prejudice, but not both. *See State of South Dakota v. Long,* 465 F.2d 65 (1972) ("It is certainly true that where there is gross misconduct on the part of the Government, no prejudice need be shown.") (citing *Black v. United States,* 385 U.S. 26, 87 S.Ct. 190, 17 L.Ed.2d 26 (1966), *O'Brien v. United States,* 386 U.S. 345, 87 S.Ct. 1158, 18 L.Ed.2d 94 (1967), *Caldwell v. United States,* 205 F.2d 879 (D.C.Cir.1953), *Coplon v. United States,* 191 F.2d 749 (D.C.Cir.1951)); *Fajeriak v. State,* 520 P.2d 795 (Alaska 1974) ("Following *Coplon,* courts have agreed that proof of deliberate eavesdropping upon attorney-client communications automatically invalidates a conviction. The United States Supreme Court implicitly adopted this rule in *Black v. United States.*").

In 1977, the United States Supreme Court appeared to alter this standard in *Weatherford v. Bursey,* 429 U.S. 545, 97 S.Ct. 837, 51 L.Ed.2d 30 (1977). *Weatherford* involved an informant/codefendant who attended meetings between Bursey and

his attorney. The Supreme Court found no Sixth Amendment violation where there was no tainted evidence, no communication of defense strategy to the prosecution, and no purposeful intrusion by the government. *Id.* at 558, 97 S.Ct. 837. The Court held that establishing a violation of a defendant's Sixth Amendment right to counsel requires a showing of "at least a realistic possibility" of prejudice. *Id.*

Because the government interceptions in *Weatherford* were "unintended and undisclosed" (*id.* at 565, 97 S.Ct. 837, Marshall, J., dissenting), the Court did not address whether the rule would be different in a case involving deliberate misconduct by the government. Nor did the Court decide who bears the burden of proving prejudice. In 1988, the Supreme Court declined to hear a case that would have resolved a hopeless conflict among the circuits on that issue. *See Cutillo v. Cinelli*, 485 U.S. 1037, 108 S.Ct. 1600, 99 L.Ed.2d 915 (1988). Dissenting from the denial of certiorari, Justice White, joined by the Chief Justice and Justice O'Connor, summarized the positions taken by the various circuits. At one extreme are those courts which require the defendant to prove prejudice. At the other extreme are those which find a *per se* violation of the Sixth Amendment when the prosecution improperly obtains confidential defense strategy information or intentionally places an informer in the defense camp. In the middle are those courts which hold that where confidential defense strategy information is transmitted to the prosecution and the defendant makes a prima facie showing of prejudice, the burden then shifts to the prosecution to prove there was no prejudice to the defendant from the disclosure. *Id.* Thus, we have little guidance from the federal courts on this issue.

██ *Weatherford* is inapplicable to the case *sub judice*, where a member of the prosecution team intentionally eavesdropped on a confidential defense conversation. We conclude, consistent with existing federal precedent, that a defendant must show either deliberate prosecutorial misconduct *or* prejudice to make out a violation of the Sixth Amendment, but not both. Deliberate prosecutorial misconduct raises an irrebuttable presumption of prejudice. The content of the protected communication is not relevant. The focus must be on the misconduct. In cases involving unintentional intrusions into the attorney-client relationship, the defendant must make a

prima facie showing of prejudice to shift the burden to the prosecution to prove the defendant was not prejudiced.

Because a deputy solicitor of the Eleventh Circuit Solicitor's Office eavesdropped on a privileged conversation between appellant and his attorney, we reverse appellant's conviction and disqualify the Eleventh Circuit Solicitor's office from prosecuting appellant at his new trial.

### B. Should the solicitor's office have been disqualified to protect the integrity of the judicial system?

■ Although we have disqualified the Eleventh Circuit Solicitor's Office from prosecuting appellant, we address appellant's second assertion because of its importance to judges, attorneys, criminal defendants, and indeed all citizens of this state. Every South Carolinian has a vital interest in the fair administration of justice. This Court bears the ultimate responsibility for maintaining judicial integrity and high standards of professional conduct among the members of the bar, and for protecting and defending the constitutional rights of the accused.

■ The integrity of the entire judicial system is called into question by conduct such as that engaged in by the deputy solicitor and investigating officers in this case. Prosecutors are ministers of justice and not merely advocates. *See* Rule 3.8, cmt., Rules of Professional Conduct. A prosecutor has special responsibilities to do justice and is held to the highest standards of professional ethics. The participation at trial of a prosecutor who has eavesdropped on the accused and his attorney tarnishes us all. We will not tolerate deliberate prosecutorial misconduct which threatens rights fundamental to liberty and justice.

### II. Did the trial judge err in refusing to allow appellant to impeach law enforcement witnesses with their participation in the videotaping?

■ Appellant contends the trial court erred in not allowing him to impeach law enforcement witnesses with their participation in the videotaping of his conversation with his attorney. We disagree.

■ As a general rule, a trial court's ruling on the proper scope of cross-examination will not be disturbed absent a manifest abuse of discretion. *State v. Mitchell,* 330 S.C. 189, 196, 498 S.E.2d 642, 645 (1998).

■ Under Rule 608(b), SCRE, specific instances of a witness's misconduct may be inquired into on cross-examination if probative of the witness's character for truthfulness or untruthfulness. The inquiry under Rule 608(b) is limited to those specific instances of misconduct which are clearly probative of truthfulness or untruthfulness such as forgery, bribery, false pretenses, and embezzlement. *State v. Kelsey,* 331 S.C. 50, 75, 502 S.E.2d 63, 75 (1998) (citing Weinstein's Federal Evidence, Character and Conduct of Witness § 608.12(4)(a–b) (1998)). Rule 608(c), SCRE, permits impeachment of a witness with evidence of "bias, prejudice or any motive to misrepresent."

The occurrence of the videotaping is not relevant to any trial issue. Any mention of the videotape, even by the defense, could have jeopardized the trial by raising questions in jurors' minds about the contents of the tape. The trial judge made every effort to prevent jurors from knowing about the videotape. His refusal to allow the questioning was not an abuse of discretion.

III. Did the trial judge err in ruling appellant's cellmate
was not a government agent at the time appellant
made incriminating statements to him?

■ Appellant contends the trial court erred in ruling his cellmate was not a government agent at the time appellant made incriminating statements to him. Therefore, he argues, the trial court erred in admitting the informant's testimony. On the record before us, we disagree.

When the government intentionally places a paid informant in close proximity to a defendant and tells him not to initiate any conversations with the defendant but to be alert to any incriminating statements, it violates the accused's Sixth Amendment right to counsel. *United States v. Henry,* 447 U.S. 264, 100 S.Ct. 2183, 65 L.Ed.2d 115 (1980), *Massiah v. United States,* 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964). However, the *Massiah/Henry* rule is not implicated

every time an inmate receives information from a fellow inmate and subsequently transmits it to the government, even when the transmission is made in hope of receiving a benefit. *See United States v. Stevens,* 83 F.3d 60, 64 (2d Cir.1996). In *Stevens,* the court found no Sixth Amendment violation where there was support in the record for the trial court's conclusion that the defendant had been the primary initiator of contact with the inmates/informants, and that the government never encouraged the contact. *Id.* at 64–65. In *Thomas v. Cox,* 708 F.2d 132 (4th Cir.1983), the Fourth Circuit likewise found no Sixth Amendment violation where the inmate/informant was "self-initiated" and had no prior arrangement with the government. The court noted

> [F]or whatever reason [the informant] acted—whether "conscience," as the state court found, or "curiosity," as he testified, or even conceivably from an unencouraged hope to curry favor—he could not properly be characterized, as could the informant in *Henry,* as "a Government agent expressly commissioned to secure evidence."

*Id.* at 136 (internal citations omitted).

At an *in camera* hearing to determine the admissibility of the cellmate's testimony and evidence derived from it, appellant presented evidence suggesting he was placed in a cell with the other inmate with the intent that the inmate elicit information from him about the crime. Appellant further introduced evidence the informant was given special treatment in the form of canteen privileges, $1500 worth of dental work, and release on a personal recognizance bond. The State presented evidence tending to show appellant initiated the conversations, the informant acted on his own initiative when he informed on appellant, and the canteen privileges and dental work were given to the informant in connection with an unrelated case. The State also offered an explanation for the informant's release on a personal recognizance bond.

The evidence concerning the informant's involvement is highly contradictory and susceptible of both appellant's and the State's interpretations. In some instances, the testimony is diametrically opposed. Furthermore, there are a disturbing number of unexplained occurrences surrounding this event, including the disappearance of jail records for the three days

encompassing the time appellant was moved into the informant's cell. However, the trial judge carefully considered both the evidence and lack thereof and made a well reasoned decision in light of all the evidence before him to admit this testimony. In making his rulings, the trial judge stated that he had considered the testimony of the various witnesses, with particular focus on what could be corroborated by independent facts, and had taken into account the interests and biases of the witnesses, as well as their credibility. He concluded the informant was not acting as a government agent at the time appellant initially confessed to him, and allowed the informant to testify to statements made by appellant concerning the crime and the disposal of the stolen property and the weapon. The trial judge further concluded the informant's release on a personal recognizance bond was connected to his assistance in locating the murder weapon. He therefore excluded both the informant's testimony in that regard and the murder weapon itself.

Appellant makes no claim—and we see no basis for a claim—that the trial judge incorrectly applied the above law to the facts as he found them. Appellant instead challenges the factual findings underpinning the court's rulings of law. However, this Court is bound by the trial court's factual findings unless they are clearly erroneous. *See State v. Amerson,* 311 S.C. 316, 320, 428 S.E.2d 871, 873 (1993) (appellate courts are bound by fact findings in response to motions preliminary to trial when the findings are supported by the evidence and not clearly wrong or controlled by error of law). On the facts in this record, we cannot say the trial court's findings were clearly erroneous.[3]

IV. Did the trial judge err in refusing to allow appellant to call the solicitor and deputy solicitor to testify?

 Appellant argues the trial judge should have allowed him to call the solicitor and deputy solicitor to testify *in camera* regarding their use of the information contained in the videotape of appellant and his attorney and their knowledge of

---

**3.** Additional facts may come to light when the solicitor and deputy solicitor are cross-examined. *See infra* part IV. These facts may affect the trial court's conclusions.

circumstances surrounding the use of appellant's cellmate as an informant. We agree.

In *State v. Lee*, 203 S.C. 536, 28 S.E.2d 402 (1943), we held a criminal defendant has a right to call the prosecuting attorney as a witness, subject to the trial court's usual discretion to exclude witnesses or evidence:

> It seems to be well settled that litigants, and especially defendants in criminal cases, should not be hampered in their choice of those by whom they choose to prove their cases. And it has been held that they have the right to call as their witness the prosecuting attorney.

*Id.* at 541, 28 S.E.2d at 404.[4]

Here, appellant sought to examine the solicitor and deputy solicitor *in camera*. The court did not articulate its reasons for refusing to allow appellant to examine the solicitor and deputy solicitor. Thus, it appears the decision was controlled by an error of law and was therefore an abuse of the trial court's discretion. *See Winchester v. United Ins. Co.*, 231 S.C. 288, 98 S.E.2d 530 (1957) ("abuse of discretion" means the trial judge committed an error of law in the circumstances).

The State argues any error was harmless because the testimony of the solicitor and deputy solicitor would have been cumulative to that of other witnesses and to the statement made by the deputy solicitor as an officer of the court. We disagree. We have no way of concluding whether the prosecutors' testimony would have been merely cumulative. The deputy solicitor's statements as an officer of the court he was unaware of the informant's involvement in this case until a month before trial and he was advised by those involved that the informant had received no reward or inducement in connection with appellant's case were no substitute for under-oath cross-examination. Significantly, his statements did not address the critical question of when the informant became a government agent. The trial court's error in refusing to allow the cross-examination of the solicitor and deputy solicitor was not harmless beyond a reasonable doubt.

---

4. We did not reverse in *Lee*, finding the evidence sought from the prosecutor to be merely cumulative, and therefore within the trial court's discretion to exclude.

V. Did the trial judge err in admitting evidence drugs were mailed to appellant at the detention center?

During the penalty phase of the trial, the State introduced evidence that several pieces of mail containing illegal drugs were addressed to appellant at the Lexington County Detention Center, but never received by him. Appellant argues it was error to admit this evidence when the State could not show appellant had conspired to have the drugs mailed to him. We agree.

A trial judge is accorded broad discretion in ruling on the admissibility of testimony. *State v. Langley,* 334 S.C. 643, 515 S.E.2d 98 (1999). All relevant evidence is admissible. Rule 402, SCRE. Evidence is relevant if it has a direct bearing upon and tends to establish or make more or less probable the matter in controversy. Rule 401, SCRE; *State v. Alexander,* 303 S.C. 377, 401 S.E.2d 146 (1991).

In *State v. Bailey,* 279 S.C. 437, 308 S.E.2d 795 (1983), we held it was error for the lower court to allow evidence the appellant's father and brother had attempted to procure perjured testimony because "the effect of its introduction into evidence was to create the inference that appellant Bailey had attempted through his father and brother to procure perjured testimony, when there was no evidence to connect appellant with the attempt other than his blood relationship." *Id.* at 440, 308 S.E.2d 797. The conduct of the appellant's father and brother "was irrelevant to the issue of appellant's guilt or innocence as charged." *Id.* at 439–40, 308 S.E.2d 797.

Without evidence of some nexus between appellant and the drugs or evidence appellant conspired to have the drugs sent to him, evidence that drugs were addressed to appellant in prison is not relevant to appellant's adaptability to prison life. The trial court therefore abused its discretion in admitting such evidence.

**REVERSED.**

TOAL, Acting C.J., MOORE and WALLER, JJ., and Acting Associate Justice WILLIAM T. HOWELL, concur.