582 S.E.2d 728

**In the Matter of Francis A. HUMPHRIES, Jr., Respondent.**

**No. 25660.**

Supreme Court of South Carolina.

Submitted May 5, 2003.

Decided June 2, 2003.

568

Henry B. Richardson, Jr., and Michael S. Pauley, both of Columbia, for The Office of Disciplinary Counsel.

A. Peter Shahid, Jr. and Coming B. Gibbs, Jr., both of Charleston, for respondent.

PER CURIAM:

In this attorney disciplinary matter, respondent and the Office of Disciplinary Counsel have entered into an Agreement for Discipline by Consent pursuant to Rule 21, RLDE, Rule 413, SCACR. In the agreement, respondent admits misconduct and consents to a dismissal, the issuance of a letter of caution or the imposition of any of the sanctions set forth in Rule 7(b), RLDE. We accept the agreement and find a one year suspension from the practice of law is the appropriate

sanction.   The facts, as set forth in the agreement, are as follows.

## *Facts*

Respondent was employed as an Assistant Solicitor in the Eleventh Judicial Circuit.   On May 29, 1995, respondent was on call in connection with his duties as an Assistant Solicitor and was summoned to the offices of the Lexington County Sheriff's Department.

Upon his arrival at the Sheriff's Department, respondent was advised that a suspect, Robert Joseph Quattlebaum, was being held in connection with an apparent murder, a burglary or robbery of the victim's house, and the shooting of another victim.   Respondent was also informed that Quattlebaum's attorney, John E. Duncan, was with Quattlebaum at the Sheriff's Department.

Sometime later, respondent was advised that Quattlebaum had consented to a polygraph examination.   Respondent was not initially in the vicinity of the room where the polygraph examination was to take place, but was waiting in or near a conference room in another part of the building where respondent had, from time to time, been consulted by Sheriff's Department personnel concerning their investigation of Quattlebaum.

However, respondent was later summoned by Sheriff's Department personnel to the polygraph examiner's office, which was close to the polygraph room itself.   Respondent discovered Sheriff's Department personnel watching a video monitor in the polygraph examiner's office.   He surmised that he had been summoned to the office to observe what was being shown on the video monitor.

Respondent then realized that the video monitor was playing video and audio portions of a conversation between Quattlebaum and Duncan in the polygraph room.   It was readily apparent to respondent that the conversation was intended by Quattlebaum and Duncan to be a confidential, attorney-client privileged communication.   Respondent told the Sheriff's Department personnel present to turn off the video monitor.

Respondent then went down the hall to the office of Lieutenant Phillips, the senior law enforcement officer in the vicinity. Although respondent believed the monitor was turned off, he did not verify that such action had been taken, nor did he ask Lieutenant Phillips to ensure that the monitor had been turned off. Respondent had no advance knowledge that the conversation was going to be observed or listened to by Sheriff's Department personnel and had no reason to believe Sheriff's Department personnel had planned in advance to monitor the conversation.

Respondent did not advise Duncan that the conversation between Duncan and Quattlebaum had been overheard by Sheriff's Department personnel. Quattlebaum was arrested when he emerged from the polygraph room.

Within a day or so, respondent notified Solicitor Donald V. Meyers, of the events which took place at the Sheriff's Department. Respondent did not notify Duncan or the judge of the Court of General Sessions that the conversation between Duncan and Quattlebaum had been overheard by Sheriff's Department personnel.

Duncan withdrew as counsel soon after Quattlebaum's arrest. Joseph M. McCulloch, Jr. and Katherine E. Evatt were appointed to represent Quattlebaum. On May 30, 1995, respondent and Evatt discussed Quattlebaum's case, but respondent made no mention of the conversation between Duncan and Quattlebaum being overheard by Sheriff's Department personnel.

In March 1996, respondent heard a rumor from Edward V. Hite, the principal investigator on Quattlebaum's case, that a videotape of the conversation between Duncan and Quattlebaum might exist. Respondent immediately advised Solicitor Myers of the rumor and discussed with the Solicitor whether that information was subject to discovery. Respondent maintains it was determined by respondent and the Solicitor that the information would be disclosed to opposing counsel during the normal course of discovery and upon proper requests. In *In re Myers*, 355 S.C. 1, 584 S.E.2d 357, Op. No. 25647 (S.C. Sup.Ct. filed May 5, 2003), this Court found respondent and the Solicitor discussed whether the tape was discoverable, and the Solicitor stated that if there was a tape, respondent should

give it to the defense. We are not otherwise persuaded by respondent's rendition of these facts. Respondent took no action at that time to substantiate the rumor nor was opposing counsel notified of the rumor until much later.

On May 28, 1996, opposing counsel served discovery motions, pursuant to Rule 5, SCRCrimP, and *Brady v. Maryland*[1], on the State. These motions were received and handled exclusively by respondent on behalf of the State. The *Brady* motion included a request for "all evidence or information within the possession, custody or control of the prosecution, the existence of which is known or by the exercise of due diligence may become known to the attorney for the prosecution ... which could tend to show that the Defendant was not guilty ... or tend to mediate punishment" and specifically requested "all statements ... of ... the defendant concerning the case ..., any and all ... photographs ... and any and all transcripts or tapes from any wire taps." The Rule 5 motion included a request for "all information available to the defendant under the Rules of Criminal Procedure," specifically citing Rules (5)(a)(1)(A), (B), (C), and (D). Respondent understood these motions were continuing in nature and, as such, would be applicable to any subsequent information available to respondent. Respondent's response to the *Brady* and Rule 5 motions made no mention of the conversation between Duncan and Quattlebaum and made no mention of the rumored existence of a videotape of that conversation.

On June 30, 1997, counsel for Quattlebaum served an additional discovery motion on the Solicitor's Office. By this time, it was contemplated by the parties that Quattlebaum's case would be heard during the November 10, 1997 term of General Sessions Court in Lexington County. The new discovery motion specifically requested "[c]opies of all videotape or audiotape of any interviews with the defendant." After receiving the motion, respondent immediately contacted the Sheriff's Department for any additional information subject to discovery, including any and all videotapes of interviews with Quattlebaum. Edward Hite confirmed that a videotape, containing both audio and video recordings, existed of the conversation between Duncan and Quattlebaum.

---

1. 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

On August 1, 1997, respondent wrote Evatt a letter stating "copies of all ... video tapes made in connection with this case will be provided at cost to you by Friday, August 8, 1997, at noon." On August 7, 1997, respondent met with Evatt and advised her that the conversation between Duncan and Quattlebaum had been overheard, that respondent was present and knew of this occurrence on the occasion that it happened, that a videotape was reported to have been made of that conversation, and if a videotape of that conversation existed it would be made available to her. This was the first time respondent advised Evatt, or any other counsel for Quattlebaum, that the conversation between Duncan and Quattlebaum had been overheard or that a videotape of the conversation existed or was rumored to exist. Respondent maintained he had not seen the videotape until it was delivered by an investigator for the Sheriff's Department, on August 7, 1997, after respondent had spoken with Evatt. A copy of the videotape was provided to Evatt the following day.

Respondent either knew or should have known of the existence of the videotape as early as March 1996. Respondent acknowledges that the existence of the tape could have, in all likelihood, been easily confirmed in March 1996 had he vigorously pursued the rumor of the existence of the videotape and demanded that the Sheriff's Department address the rumor and report back immediately as to whether the rumored videotape existed.

Respondent acknowledges that he now knows that Rule 5(a)(1)(A), SCRCrimP, provides for disclosure of "... any relevant ... recorded statement made by the defendant within the possession, custody or control of the prosecution, the existence of which is known or by the exercise of due diligence may become known to the attorney for the prosecution." Respondent also recognizes, but did not previously, that this provision of Rule 5 applies to any recorded statements of a defendant, not just to those made to law enforcement.

Respondent acknowledges that he knew that Rule 5(a)(1)(C), SCRCrimP, requires disclosure of "photographs." He also recognizes, but did not previously, that videotapes are included in the definition of "photographs" found in Rule 1001(2), SCRE.

Respondent acknowledges that, in retrospect, he may have, under Rule 5, been obligated in March 1996 and thereafter to advise counsel for Quattlebaum of the rumored existence of the videotape. He acknowledges he was further obligated to have aggressively sought to have determined whether the rumored existence of the videotape was correct and, if so, to have promptly notified counsel for Quattlebaum and to have promptly provided them with a copy of the tape.

Respondent acknowledges that, in retrospect, as an officer of the court, he had an obligation to take affirmative action to ensure the monitoring of the conversation immediately ceased and a further obligation to notify both counsel for Quattlebaum and the Court of General Sessions of the occurrence, even prior to discovery motions being filed and more so after the initial discovery motions had been served. Finally, respondent acknowledges that he should have withdrawn from participation in the Quattlebaum case on the basis set forth in *State v. Quattlebaum*, 338 S.C. 441, 527 S.E.2d 105 (2000).

## *Law*

Respondent admits that by his conduct he has violated the following provisions of the Rules of Professional Conduct, Rule 407, SCACR: Rule 3.4(c)(a lawyer shall not knowingly disobey an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists); Rule 3.4(d)(a lawyer shall not, in pretrial procedure, fail to make a reasonably diligent effort to comply with a legally proper discovery request by an opposing party); Rule 8.4(a) (it is professional misconduct for a lawyer to violate the Rules of Professional Conduct); and Rule 8.4(e) (it is professional misconduct for a lawyer to engage in conduct that is prejudicial to the administration of justice).

Respondent also admits that he has violated the following provisions of the Rules for Lawyer Disciplinary Enforcement, Rule 413, SCACR: Rule 7(a)(1) (it shall be a ground for discipline for a lawyer to violate the Rules of Professional Conduct and Rule 7(a)(5) (it shall be a ground for discipline for a lawyer to engage in conduct tending to pollute the administration of justice or to bring the courts or the legal

profession into disrepute or to engage in conduct demonstrating an unfitness to practice law).

## *Conclusion*

In our opinion, respondent's misconduct warrants a one year suspension from the practice of law. Respondent shall receive credit for the time he was on interim suspension from May 2, 2000 until August 3, 2000, and from September 20, 2000 until November 22, 2000. Within fifteen days of the date of this opinion, respondent shall file an affidavit with the Clerk of Court showing that he has complied with Rule 30, RLDE, Rule 413, SCACR.

**DEFINITE SUSPENSION.**

TOAL, C.J., MOORE, WALLER and BURNETT, JJ., concur. PLEICONES, J., not participating.