744 S.E.2d 588

The STATE, Respondent,

v.

Rashaun SOBERS, Appellant.

Appellate Case No. 2010–172246.

No. 5146.

Court of Appeals of South Carolina.

Heard June 4, 2013.
Decided June 26, 2013.

Chief Appellate Defender Robert M. Dudek, of Columbia, for Appellant.

Attorney General Alan M. Wilson, Chief Deputy Attorney General John W. McIntosh, Senior Assistant Deputy Attorney General Donald J. Zelenka, and Senior Assistant Attorney General Melody J. Brown, all of Columbia; and Solicitor Barry Barnette, of Spartanburg, for Respondent.

LOCKEMY, J.

Rashaun Sobers appeals his conviction for murder, arguing the trial court erred in (1) excluding testimony regarding gang activity, and (2) finding Rocky Watts was not qualified as an expert in gang activity. We affirm the trial court.

**FACTS/PROCEDURAL BACKGROUND**

On April 21, 2009, Sobers shot and killed Sebastian Jaramillo (the victim) in Spartanburg County. Sobers was indicted for murder, and a jury trial was held in September 2010.

At trial, Phoenix Fielder testified he, Travoiris "Trey" Gentry, Shaquila "Quita" Gentry, Jayquan Hardy, Devon Davis, Ricky Smith, and the victim were at his aunt's house the day of the shooting. According to Phoenix, Devon hit the victim "in a playful way" and a short chase ensued to a nearby cul-de-sac. Phoenix, Trey, Quita, Jayquan, and Ricky jumped in Phoenix's aunt's car and drove to the cul-de-sac. Phoenix testified Devon and the victim decided to "tap box,"[1] and he used his cell phone to video record the fight. Approximately fifteen people gathered to watch the fight. Phoenix stated he saw Sobers sitting in his parked car in the cul-de-sac, but Sobers was not involved in the fight. According to Phoenix, after the fight was over Devon and the victim shook hands, and he, Ricky, Quita, Trey, and the victim got back in his aunt's car. Phoenix testified he subsequently heard gunshots and saw Sobers pointing a gun at their car. The victim was sitting in the back of the car and was shot in the head.

Phoenix's video was shown to the jury. In addition to the fight, the video showed Trey and the victim approach Sobers's

---

1. Phoenix described "tap boxing" as "play fighting but not with fists, hands open."

car before the fight. Trey testified he asked Sobers about disrespectful comments Sobers had allegedly made about his sister. According to Trey, Sobers denied making the comments about his sister and the two shook hands and Trey walked away. Trey testified that after the fight, while the group was in the car, he saw Sobers back up his car to face their car and start shooting.

Jayquan testified he approached Sobers after the fight between Devon and the victim but before the shooting. Jayquan asked Sobers "what was up with him and Trey getting into it," and Sobers told him "there wouldn't be any fighting." Jayquan testified he then saw Sobers reach to his right and pull out a gun. Jayquan started running and testified he heard several gunshots.

Devon testified he saw Jayquan approach Sobers's car before the shooting. He stated that after Jayquan walked away from the car, he saw shots fired from Sobers's car. Quita testified she did not see or hear anyone threaten Sobers before the shooting. According to Quita, she, Trey, Ricky, Phoenix, and the victim were all in the car when she saw shots fired from Sobers's car. Ricky also testified he was in the car with Quita, Trey, Phoenix, and the victim when Sobers fired at their car.

Sobers testified Trey approached his car before the fight between Devon and the victim and asked about comments Sobers made about Trey's sister. According to Sobers, after Trey walked away, he assumed "it was over with" and "everything was ok." Sobers testified he fired shots after Trey approached his car a second time and attempted to engage him in a fight. According to Sobers, Trey grabbed his shirt through the driver's side window. Sobers stated the others who were watching the fight swarmed his car and opened the passenger side doors. Sobers testified he shot out of the front passenger door "because Trey had me," but he denied shooting directly at anyone. Sobers stated he was "scared they were going to kill me." Sobers admitted he lied when he told police following the shooting that Trey had a gun at the time of the shooting.

The jury found Sobers guilty of murder, and he was sentenced to life in prison. This appeal followed.

## STANDARD OF REVIEW

"In criminal cases, the appellate court sits to review errors of law only." *State v. Baccus*, 367 S.C. 41, 48, 625 S.E.2d 216, 220 (2006) (citing *State v. Wilson*, 345 S.C. 1, 5, 545 S.E.2d 827, 829 (2001)). "This [c]ourt is bound by the trial court's factual findings unless they are clearly erroneous." *Id.* (citing *State v. Quattlebaum*, 338 S.C. 441, 452, 527 S.E.2d 105, 111 (2000)).

## LAW/ANALYSIS

### I. Gang Activity Evidence

Sobers argues the trial court erred in excluding evidence of gangs and gang activity at the scene of the shooting. We affirm the trial court's decision.

Pre-trial, defense counsel informed the trial court it would present evidence of gang activity involving the victim and witnesses. Defense counsel indicated it had pictures from Facebook accounts belonging to Trey and Joshua Fuller [2] that showed the victim and witnesses flashing gang signs. The State argued the evidence of gang activity was irrelevant and unfairly prejudicial. Defense counsel argued the evidence went "to self-defense." According to defense counsel, Sobers pulled his gun and fired after the "mob of people" who had been watching the fight between Devon and the victim surrounded his car and tried to pull him out. Defense counsel maintained Sobers acted in self-defense because "those people are gang members" who had "just beat down another little boy." Defense counsel argued Sobers believed the fight between Devon and the victim was a gang initiation. The trial court asked whether any witness statements indicated any gang-related activity at the scene of the shooting, and the State responded that none of them did.

The trial court found Sobers failed to show the relevance of any possible gang associations to the shooting. The trial court noted Sobers's fear was related to the approaching "mob," not any specific gang associations within the mob. However, the trial court left open the possibility that Sobers could offer gang evidence, if he could establish the requisite relevancy.

2. Joshua was not present at the shooting.

Sobers offered Rocky Watts, a private investigator and former Greenville County Sheriff's deputy, as an expert in gang activity.[3] Watts testified that based on the Facebook photographs, he believed the victim, as well as Quita, Ricky, and Trey, were members of a gang. He also testified that based on his experiences in law enforcement, gangs will "videotape their activities."

Trey, Ricky, Quita, and Phoenix admitted being in the photographs and making gang signs, but they all denied being in a gang. Joshua testified the individuals in the group photo were not in a gang but were "just posing" and "all being together, like we family, all of us akin." Thereafter, the State argued (1) no witnesses testified they were in a gang, and (2) assuming they were, there was no evidence of a connection between gang activity and the shooting.

After considering the evidence of gang activity presented, the trial court found:

[W]ith respect to the testimony regarding membership by certain witnesses that have testified to be members of a gang, apparently they're all members of different gangs. But based upon what's been presented it's all the same gang if it is a gang. Nevertheless, I fail to see the connection between any membership in a gang if there is one to what occurred on April the 21st 2009. I see no connection whatsoever. They were, if you believe the testimony of the defendant, acting as a mob. But I still fail to see if they were a member of a gang that that has any connection with what occurred on April the 21st. So based upon there being no connection established, there being no relevance to it, there does not appear—that the testimony would relate or be relevant to any issue that the jury has to decide in this case; and therefore I stand by my previous ruling that that is to be excluded.

"The admission or exclusion of evidence is left to the sound discretion of the trial judge, whose decision will not be reversed on appeal absent an abuse of discretion." *State v. Saltz*, 346 S.C. 114, 121, 551 S.E.2d 240, 244 (2001). "An abuse of discretion occurs when the trial court's ruling is

---

3. The trial court found Watts was not qualified as an expert in gang activity.

based on an error of law or, when grounded in factual conclusions, is without evidentiary support." *State v. Jennings*, 394 S.C. 473, 477–78, 716 S.E.2d 91, 93 (2011) (citation omitted).

Pursuant to Rule 401, SCRE, " 'relevant evidence' means evidence having the tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

■ On appeal, Sobers argues the gang evidence proffered was relevant to show his state of mind and his fear of being killed. The State contends the evidence presented created only a mere suspicion of gang associations of the victim and witnesses. Further, the State maintains the suggestion of gang membership does not make any fact of consequence more or less probable.

We find the trial court did not abuse its discretion in finding the evidence suggesting gang associations of the victim and witnesses was not relevant. We note that although the trial court left open the possibility Sobers could offer gang evidence if he could establish the requisite relevancy, Sobers never testified the mob that surrounded his car was part of a gang. According to Sobers, the mob action caused him to fear for his life and fire his gun, but he never testified he was more fearful because the mob was part of a gang. Thus, Sobers never introduced evidence that would make gang activity relevant.

## II.  Expert Witness

Sobers argues the trial court erred in finding Watts was not qualified as an expert in gang activity. Based upon our decision to affirm the trial court's exclusion of testimony regarding gang activity, we need not address this argument. *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (holding an appellate court need not address remaining issues on appeal when disposition of a prior issue is dispositive).

**AFFIRMED.**

FEW, C.J., and GEATHERS, J., concur.