**Frank INGRAM, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 49A02–0105–CR–286.**

Court of Appeals of Indiana.

Dec. 20, 2001.

John F. Kautzman, Ruckelshaus Roland Kautzman Blackwell & Hasbrook, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Cynthia L. Ploughe, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

SHARPNACK, Chief Judge.

Frank Ingram brings an interlocutory appeal from the denial of his motion to dismiss. Ingram raises one issue which we revise and restate as whether the trial court abused its discretion by finding that the State rebutted the presumption of prejudice to Ingram resulting from the police videotaping and audiotaping private conversations between Ingram and his attorney.[1] We affirm and remand.

The evidence most favorable to the trial court's denial of the motion to dismiss follows. In early 2000, the Indianapolis Police Department's Internal Affairs Division began investigating complaints against Ingram, an Indianapolis Police Department Officer. In March 2000, the investigation was turned over to the Sex Crimes Division of the Indianapolis Police Department and detectives of that division began investigating.

Ingram's attorney, John Kautzman, and detectives arranged an interview for March 20, 2000. At the interview, Ingram was represented by Kautzman. The interview was both videotaped and audiotaped. However, the parties dispute whether the interview was taped with Ingram's and

---

1. Ingram also appears to argue that his Sixth Amendment rights were violated because the detectives had agreed not to record any of the interview. However, all of the cases cited by Ingram concern eavesdropping on or recording attorney-client conferences. Ingram cites no cases for the proposition that the detectives could not record the interview despite informing Ingram's attorney to the contrary. Failure to supply this court with citation to authority generally constitutes a waiver of the alleged error. *See, e.g., Shane v. State,* 716 N.E.2d 391, 401 (Ind.1999). Thus, Ingram's argument is waived.

Kautzman's knowledge.[2]

Kautzman requested that the interview be "off the record." However, the detectives requested a formal interview. The detectives left the room to discuss the issue with their superiors. Although Kautzman and Ingram were alone in the room, the videotape and audiotape continued to record their conversation. During that consultation, Ingram and Kautzman discussed whether Ingram should talk to the detectives if a formal interview was required. Ingram insisted that he wanted to talk to the detectives, discover the allegations made against him, and give his version of the story. When the detectives returned, they advised Ingram and Kautzman that they could not take his interview "off the record." The detectives proceeded to advise Ingram of his *Miranda* rights.

Later in the interview, the detectives informed Ingram that they did not believe that he had been truthful with them. The detectives said they would give Ingram a chance to discuss the matter with Kautzman. Ingram announced that he was not finished with the interview yet because he had not told his side of the story. The detectives then left the room.

Although Ingram and Kautzman were again left alone in the room, the audiotape continued to record their conversation. However, the videotape recorded only the beginning of their conversation and was then turned off. Ingram and his attorney again discussed Ingram's desire to provide the detectives with information regarding his belief that he was being framed.

The detectives then returned to the room and the interview continued. After answering more questions from the detectives, Ingram told the detectives that he was being framed by a local strip club and provided details of his allegation. The detectives said that they would investigate his allegation, and the interview ended.

The detectives continued to investigate the charges. They investigated leads that had been obtained prior to the interview with Ingram. They also investigated Ingram's theory that he was being framed. However, on April 17, 2000, Ingram was charged with criminal confinement, a class D felony,[3] sexual battery, a class D felony,[4] and four counts of bribery, a class C felony.[5]

When the prosecution learned of the videotape and audiotape containing the attorney-client conferences, the original recordings were turned over to Kautzman. On January 10, 2001, Ingram filed a motion requesting suppression of the videotape and audiotape and all evidence discovered after the interview. Further, Ingram requested that the charges be dismissed for investigatory misconduct. Ingram argued that taping the interview and the

2. In its January 16, 2001 response to Ingram's Motion to Suppress, the prosecution admitted that the statement was taped "without the Defendant's knowledge and after the investigators represented to the Defendant that his statement would not be taped." Appellant's Appendix at 24. However, later at the evidentiary hearing, the prosecution argued that no arrangement regarding the videotaping of the interview had been reached between the detectives and Kautzman. The prosecution stated that it had been relying upon Kautzman's representations regarding the videotape and that the prosecution subsequently learned that the representations were incorrect. The trial court did not revise its findings on this issue. Given our holding that Ingram waived consideration of his claim that taping the entire interview violated his Sixth Amendment rights, this issue is irrelevant to our determination of the remaining issue. *See supra* note 1.

3. Ind.Code § 35-42-3-3.

4. Ind.Code § 35-42-4-8.

5. Ind.Code § 35-44-1-1.

private attorney-client conferences violated his Sixth Amendment right to counsel. The State conceded that a violation of Ingram's Sixth Amendment rights had occurred.

The trial court concluded that a Sixth Amendment violation had occurred. However, the trial court determined that "the majority of courts have required a showing of actual prejudice to the defendant before any sanction was appropriate." Appellant's Appendix at 44. The trial court presumed prejudice to Ingram and ordered a hearing to allow the State to rebut the presumption of prejudice. After an evidentiary hearing, the trial court entered the following written order: "Court denies request for dismissal of charges. Court grants suppression of defendant [sic] statement to police on March 20, 2000...." Appellant's Appendix at 63–64.

■ The sole issue is whether the trial court abused its discretion by finding that the State rebutted the presumption of prejudice to Ingram resulting from the police videotaping and audiotaping private conversations between Ingram and his at-

torney. We review a trial court's denial of a motion to dismiss for an abuse of discretion. *See, e.g., Sivels v. State,* 741 N.E.2d 1197, 1202 (Ind.2001); *Johnston v. State,* 530 N.E.2d 1179, 1180 (Ind.1988). In reviewing a trial court's decision for an abuse of discretion, we reverse only where the decision is clearly against the logic and effect of the facts and circumstances. *Joyner v. State,* 678 N.E.2d 386, 390 (Ind. 1997), *reh'g denied.*

■ Because Ingram and the State argued at the trial court level and on appeal that the Sixth Amendment was applicable and was violated, we proceed as if a violation of Ingram's Sixth Amendment right to counsel has occurred.[6] However, the parties disagree about whether Ingram was prejudiced by this violation of his constitutional rights. In this case, the trial court presumed that Ingram was prejudiced by the violation of his Sixth Amendment rights. The trial court held an evidentiary hearing and required the State to rebut the presumption of prejudice.

In *U.S. v. Morrison,* the defendant had been indicted and retained counsel. *U.S.*

---

6. However, we note that the Sixth Amendment does not apply to this situation. The Sixth Amendment to the United States Constitution provides that "[in] all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence." In *McNeil v. Wisconsin,* the Supreme Court explained when the Sixth Amendment's right to counsel arises:

The Sixth Amendment right [to counsel] ... does not attach until a prosecution is commenced, that is, at or after the initiation of adversary judicial criminal proceedings—whether by way of formal charge, preliminary hearing, indictment, information, or arraignment.
*McNeil v. Wisconsin,* 501 U.S. 171, 175, 111 S.Ct. 2204, 2207, 115 L.Ed.2d 158 (1991) (holding that a defendant's statements regarding offenses for which he had not been charged were admissible notwithstanding the attachment of his Sixth Amendment right to counsel on other charged offenses). *See also*

*Ajabu v. State,* 693 N.E.2d 921, 927 (Ind. 1998) ("The federal right to counsel as protected by the Sixth Amendment, so as to ensure a fair trial after charges are filed is not implicated here because Ajabu had not been charged or arraigned at the time of the alleged constitutional deprivation."); *cf. State v. Quattlebaum,* 338 S.C. 441, 527 S.E.2d 105, 107 n. 2 (2000).

In this case, Ingram gave the interview to the police on March 20, 2000. On April 17, 2000, the charges at issue were brought against Ingram. As in *Ajabu,* the Sixth Amendment right to counsel is not implicated here because Ingram had not been charged or arraigned at the time of his alleged constitutional deprivation. *See Ajabu,* 693 N.E.2d at 927. However, because the State concedes that a violation of the Sixth Amendment has occurred and the parties do not argue that the Sixth Amendment is inapplicable, we proceed as if the police conduct in this case violated the Sixth Amendment's right to counsel.

*v. Morrison,* 449 U.S. 361, 362, 101 S.Ct. 665, 666, 66 L.Ed.2d 564 (1981), *reh'g denied,* 450 U.S. 960, 101 S.Ct. 1420, 67 L.Ed.2d 385 (1981). Despite their knowledge that the defendant had retained counsel, the police met with the defendant without the knowledge or permission of her counsel. *Id.* The defendant "moved to dismiss the indictment with prejudice on the ground that the conduct of the agents had violated her Sixth Amendment right to counsel." *Id.* Although the district court denied the motion to dismiss, the Court of Appeals for the Third Circuit reversed and dismissed the indictment. *Id.* at 363, 101 S.Ct. at 667.

The Supreme Court assumed that the Sixth Amendment was violated, *id.* at 364, 101 S.Ct. at 667, and noted that:

> Cases involving Sixth Amendment deprivations are subject to the general rule that remedies should be tailored to the injury suffered from the constitutional violation and should not unnecessarily infringe on competing interests.... [W]hen before trial but after the institution of adversary proceedings, the prosecution has improperly obtained incriminating information from the defendant in the absence of his counsel, the remedy characteristically imposed is not to dismiss the indictment but to suppress the evidence or to order a new trial if the evidence has been wrongfully admitted and the defendant convicted. In addition, certain violations of the right to counsel may be disregarded as harmless error.
>
> \*     \*     \*     \*     \*     \*
>
> More particularly, absent demonstrable prejudice, or substantial threat thereof, dismissal of the indictment is plainly inappropriate, even though the violation may have been deliberate. This has been the result reached where a Fifth Amendment violation has occurred, and

we have not suggested that searches and seizures contrary to the Fourth Amendment warrant dismissal of the indictment.

*Id.* at 364–367, 101 S.Ct. at 667–669 (citations omitted) (footnote omitted). Thus, the Supreme Court required a showing of prejudice resulting from the constitutional violation. However, the Supreme Court held that the defendant "demonstrated no prejudice of any kind" and reversed the dismissal of the indictment. *Id.* at 366–367, 101 S.Ct. at 669.

Following *Morrison,* courts are split regarding which party bears the burden of persuasion for showing or rebutting prejudice in cases of Sixth Amendment violations. *See Cutillo v. Cinelli,* 485 U.S. 1037, 1037–1038, 108 S.Ct. 1600, 1601, 99 L.Ed.2d 915 (1988) (White, J., dissenting from denial of petition for certiorari). *See also State v. Quattlebaum,* 338 S.C. 441, 527 S.E.2d 105, 108–109 (2000). However, in this case, we need not decide whether the trial court applied the appropriate burden of persuasion. Even assuming arguendo that requiring the State to rebut the presumption of prejudice was the appropriate burden of persuasion, the trial court did not abuse its discretion in denying Ingram's motion to dismiss.

█  Ingram contends that, as a result of the interview, the detectives learned his defense strategy and learned of his notebooks and his tape recorder in his police car. Ingram argues that the trial court erred because much of the investigation occurred after the interview. He points out that fifteen of twenty-five witnesses were not interviewed until after the interview at issue. Many of the witnesses related specifically to Ingram's defense strategy that he was being framed. Moreover, Ingram's notebooks were seized after the interview pursuant to a search war-

rant. Thus, Ingram argues that he was prejudiced and was entitled to a dismissal of the charges for the Sixth Amendment violation.

By contrast, the State argues that the investigation was well underway when the interview took place and that Ingram was not prejudiced by the recording of the interview and attorney-client conferences. The State contends that records from Ingram's mobile data terminal had been ordered prior to the interview. Additionally, the State argues that the detectives had already been informed that Ingram took "copious" notes and were already aware of Ingram's hidden tape recorder in his car. Appellee's Brief at 11.

The State contends that the only piece of evidence learned in the interview was Ingram's theory of being framed by the management of a local strip club. However, the State argues that learning this information was not prejudicial to Ingram, but rather allowed the police to investigate Ingram's version of the story, which would have permitted charges to be dropped if the investigation supported his theory.

Neither Ingram nor the State differentiates between prejudice resulting from the recording of the attorney-client conferences and prejudice resulting from the taping of the interview with the detectives. Much of the prejudice alleged by Ingram does not specifically result from the taping of the attorney-client conferences. Regardless, the State demonstrated sufficient evidence to rebut the presumption of prejudice. Prior to the interview, the police had conducted a significant investigation into the accusations against Ingram. The police had already interviewed the complainants, obtained evidence from the complainants, and interviewed other witnesses. Additionally, the police had requested and received records from the mobile data terminal in Ingram's vehicle regarding Ingram's traffic stops and communications to and from other officers. The police were already aware that Ingram took "copious" notes and had a tape recorder in his vehicle. Transcript at 164–165.

Moreover, Ingram's argument that he was prejudiced by the police learning his defense strategy is contradicted by the clear indications that Ingram voluntarily gave the police information on his theory of being framed. In fact, during the interview, Ingram insisted on providing the police with that information. The information was not learned as a result of the videotaping and audiotaping of Ingram's private conversations with his attorney.

While we do not condone the police actions in this case, the trial court's decision is not clearly against the logic and effect of the facts and circumstances. Thus, the trial court did not abuse its discretion in finding that the State rebutted the presumption of prejudice resulting from the taping of Ingram's private attorney-client conferences. *Cf. Morrison,* 449 U.S. at 366–367, 101 S.Ct. at 669.

For the foregoing reasons, we affirm the trial court's denial of the motion to dismiss and remand for further proceedings.

Affirmed and remanded.

NAJAM, J. and RILEY, J. concur.