

**FILED**

Jun 10 2015, 9:25 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT

Gregory F. Zoeller
Attorney General of Indiana

Brian Reitz
Deputy Attorney General
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

Craig V. Braje
Elizabeth A. Flynn
Michigan City, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| State of Indiana,<br>*Appellant-Plaintiff,*<br><br>v.<br><br>Brian J. Taylor,<br>*Appellee-Defendant.* | June 10, 2015<br><br>Court of Appeals Cause No.<br>46A04-1407-CR-316<br><br>Appeal from the LaPorte Superior<br>Court<br>Cause No. 46D01-1403-MR-110<br><br>The Honorable Kathleen B. Lang,<br>Judge |

**Barnes, Judge.**

## Case Summary

In this interlocutory appeal, the State appeals the trial court's partial grant of a motion to suppress filed by Brian Taylor. We affirm in part, reverse in part, and remand.

## Issue

The State raises one issue, which we restate as whether the trial court properly excluded all testimony of police officers that asserted their Fifth Amendment right to remain silent during depositions and testimony at the suppression hearing.

## Facts

On March 14, 2014, at approximately 6:30 a.m., Taylor's grandfather took him to the Michigan City Police Department. Taylor had blood on his clothing, and he refused to speak with the officers. Taylor was placed in an interview room, which was equipped with audio and video recording devices. The officers soon learned that Taylor's girlfriend, Simone Bush, had died of a gunshot wound to her neck at her grandparents' residence. At 3:18 p.m., Taylor was told that he was being arrested for Bush's murder.

At 4:12 p.m., Attorney David Payne arrived and met with Taylor in the interview room. Detective Steven Westphal "sarcastically, jokingly" told Payne to "flip a toggle switch" unless Payne wanted them to listen to the conversation. Tr. p. 269. Payne flipped the toggle switch and had a thirty to forty minute conversation with Taylor. According to Taylor, they discussed "all aspects of both the case and his defense." *Id.* Unbeknownst to Payne and Taylor, some officers and LaPorte County Chief Deputy Prosecutor Robert Neary were able to hear some parts of the conversation from a nearby room. It is clear that,

however long the conversation was eavesdropped on, certain crucial information regarding Taylor's guilt was heard by law enforcement personnel.

[5] On March 16, 2014, the State charged Taylor with murder. On March 18, 2014, Neary informed Taylor's counsel, Craig Braje, of the eavesdropping. The next day, Neary followed up with a letter to Braje and informed him as follows:

> At the time Mr. Payne entered the interview room to speak with Mr. Taylor the recorder was disabled. However, the video/audio still ran to monitor the events in the interview room which could be watched/listened to in another room.
>
> I was present in the other room and overheard portions of Mr. Payne's and Mr. Taylor's conversation up to the point where Mr. Payne asked Mr. Taylor where the weapon was and Mr. Taylor's response. At that point, the audio portion was disabled as well.
>
> I then told you those present were sternly told not to search for this weapon. However, Monday afternoon I was informed, that despite my warnings, detectives went to the area and located the weapon. The weapon was now in the possession of the Michigan City Police Department.
>
> I explained I did not believe the weapon to be admissible under these circumstances. You indicated the issue of admissibility would need to be addressed at a later date.
>
> Finally, I indicated I had self-reported myself to the Indiana Disciplinary Commission for my conduct. I stated that I understood you would likely report it to the Commission as well.

App. p. 191.

[6] During discovery depositions of detectives Al Bush, Steven Westphal, Sean Steele, Justin Frever, and Matthew Barr, the officers invoked their Fifth Amendment right against self-incrimination and refused to answer questions concerning the eavesdropping.

[7] Taylor filed a motion to suppress and requested that the trial court suppress the gun and "any information or evidence which was obtained by investigating officers through improper eavesdropping by officials of the State of a confidential and privileged conversation between the Defendant and his attorney." *Id.* at 99. Attorney Payne filed an affidavit in which he stated that, during the meeting with his client at the police station, he had "discussed confidential matters with Brian Taylor regarding the criminal defense of charges likely to be filed . . . ." *Id.* at 101.

[8] The State stipulated to the suppression of the gun. According to the State, "Any and all evidence or information obtained after 4:12 p.m. on March 14, 2014, other than the above referenced firearm, was procured in the standard course of investigation, has a source independent from the privileged conversation between the Defendant and his attorney and was procured without regard to the privileged conversation between the Defendant and his attorney thus rendering the connection between the allegedly lawless conduct and the discovery of the challenged evidence so attenuated as to dissipate any perceived taint." *Id.* at 145.

[9] Taylor responded to the State's stipulation and noted the difficulty with suppressing evidence learned from the eavesdropping:

> [He] does not know whether the information or evidence that was collected in the State's investigation, after 4:12 p.m. on March 14, 2014, was or could have been tainted by the misconduct by the police officials and the member of the prosecuting attorney's office because the police officers that have been deposed have invoked their Fifth

Amendment right against self-incrimination. Therefore, the Defendant does not know the identities of officers present in the conference room where the privileged conversation was overheard, the specific nature of the information that was heard, the extent to which officers discussed the privileged information amongst themselves and other officers and, most importantly the Defendant does not know how the privileged information that was overheard by police officials affected the course and scope of the State's investigation.

*Id.* at 188-89. Taylor argued that, "[b]ecause of the deliberate misconduct on the part of the State and police officials, all evidence or information obtained after 4:12 p.m. on March 14, 2014 should be suppressed under the theories of violation of the Sixth Amendment, violation of the Attorney-Client privilege, and the exclusionary rules existing under the Federal Wiretapping Act, the Indiana Wiretapping Act and the Fourth Amendment." *Id.* at 189.

[10] Taylor also filed a memorandum in support of his motion to suppress. In the memorandum, he sought to suppress "all portions of the State's investigation, including physical evidence, documentary evidence and testimony from witnesses, that occurred after 4:12 p.m. on March 14, 2014." *Id.* at 196. Taylor also requested that "any witness who intends on invoking his or her Fifth Amendment right against self-incrimination be barred from testifying." *Id.* Taylor based his argument on the right to counsel under the Sixth Amendment and Article 1, Section 13 of the Indiana Constitution, the attorney-client privilege, prosecutorial misconduct, due process rights, violations of the federal and Indiana Wiretapping Acts, the Confrontation Clause of the Sixth Amendment, and the effects of invoking the Fifth Amendment by a witness. *Id.* at 212.

[11] At the hearing on the motion to suppress, detectives Al Bush, David Cooney, Gregory Jesse, Matthew Barr, Jason Costigan, and Justin Frever refused to answer questions concerning the eavesdropping and exercised their Fifth Amendment right to remain silent. After the hearing, the trial court entered an order partially granting the motion to suppress. The trial court found that the suppression of all evidence discovered "after the interview ended at 4:12 p. March 14, 2014" was not required. *Id.* at 222-23. However, "There does have to be a specific finding by the Court . . . that there was an independent source of information and that the specific evidence was in no way connected to the conversation between defendant and his attorney in the interview room that afternoon." *Id.* at 223. The trial court ruled that many pieces of evidence discussed at the hearing "represent evidence that would be part of a standard police investigation of a homicide" and would not be suppressed. *Id.* Some other pieces of evidence, especially exhibits involving the autopsy, were discussed at the hearing, and the trial court noted that the State had not established "an independent basis" for those exhibits. *Id.* The trial court ruled that the State would be required to "establish an independent basis before these exhibits can be admitted." *Id.*

[12] The trial court then addressed the police officers' invocation of their Fifth Amendment right against self-incrimination and found:

> Just as the Fifth Amendment protects those witnesses who have
> invoked their right to remain silent, in this case so too, the Sixth
> Amendment guarantees the defendant a right to counsel and the right
> to confront all witnesses against him and to have compulsory process

for obtaining witnesses in his favor. The invocation of the Fifth Amendment by the police officers in this case however, impacts defendant's rights under the Sixth Amendment. Defendant is unable to obtain any information about what was overheard by police, the individuals who overheard their conversation, who was told of the contents of the conversation, and what actions were taken as a result of the information learned from the eavesdropping by law enforcement. The defendant is totally unable to cross examine any of the witnesses who have or will invoke their rights under the Fifth Amendment about an issue that is in all likelihood critical to his defense. The protections under the Fifth Amendment for the witnesses [sic] have invoked that privilege cannot subsume the ability of the defendant to properly confront the witnesses against him.

The police misconduct that occurred in the course of this investigation resulted in a grave violation of the defendant's constitutional rights. In light of all the facts of this case and the egregious actions by the police and the State, an extraordinary remedy must be fashioned. *See State of New Jersey v. Sugar*, 495 A.2d 90, 104 (1985) (testimony of any person who actually engaged in or had direct knowledge of unlawful eavesdropping by police officers, or conversation between defense counsel and the defendant, was barred as tainted as a result of the dissemination or exploitation of information received). Any witness who has asserted the Fifth Amendment right to silence in a deposition or during testimony at the hearing on the Motion to Suppress is barred from testifying at trial. Neither the prosecution nor the defense can call any witness knowing that the individual will assert the Fifth Amendment. If a witness is called to testify and invokes the Fifth Amendment without previously expressing that intent, the testimony of that witness will be stricken in its entirety.

*Id.* at 226-27.

[13] The State requested that the trial court certify its order pursuant to Indiana Code Section 35-38-4-2(6)[1], and the trial court certified the order for

---

[1] Indiana Code Section 35-38-4-2(6) provides:

interlocutory appeal. We accepted jurisdiction over this interlocutory appeal pursuant to Indiana Appellate Rule 14(B).

## Analysis

[14] The State is appealing from the partial grant of Taylor's motion to suppress. "In the appellate review of a trial court's motion to suppress, the reviewing court determines whether the record discloses 'substantial evidence of probative value that supports the trial court's decision.'" *State v. Washington*, 898 N.E.2d 1200, 1203 (Ind. 2008) (quoting *State v. Quirk*, 842 N.E.2d 334, 340 (Ind. 2006)). We do not reweigh evidence. *Id.* The State, appealing from a negative judgment, must show that the trial court's ruling on the suppression motion was contrary to law. *Id.*

[15] On appeal, the State argues that the trial court improperly barred the officers who asserted their Fifth Amendment right from testifying at Taylor's trial. The State does not appeal the suppression of the handgun and the procedure

---

Appeals to the supreme court or to the court of appeals, if the court rules so provide, may be taken by the state in the following cases:

\* \* \* \* \*

(6) From any interlocutory order if the trial court certifies and the court on appeal or a judge thereof finds on petition that:

(A) the appellant will suffer substantial expense, damage, or injury if the order is erroneous and the determination thereof is withheld until after judgment;

(B) the order involves a substantial question of law, the early determination of which will promote a more orderly disposition of the case; or

(C) the remedy by appeal after judgment is otherwise inadequate.

established by the trial court to verify an independent source for each piece of evidence discovered after the eavesdropping. Rather, the State's argument concerns only the trial court's exclusion of the officers' testimony after they asserted their Fifth Amendment right at their depositions and at the suppression hearing.

[16] We begin by noting our disappointment, displeasure, and disgust at the conduct of all the law enforcement officers. The integrity of the entire judicial system is called into question by the conduct engaged in here by all who should know better. *See State v. Quattlebaum*, 527 S.E.2d 105, 109 (S.C. 2000). The New Jersey Supreme Court, in discussing intentional eavesdropping by police officers, appropriately stated:

> We are outraged. We are compelled to say exactly that. Any court, but particularly the highest Court of this State, does more than apply settled principles of social order. A court affirms those values emerging from the conflict between the ideals of liberty and democracy, between individual rights and public responsibilities. There are others to give strong voice against violence to person and property, to proclaim social needs and to promote economic welfare. But there are few to deplore the deprivation of an individual's liberty, and none other so clothed in the moral traditions of the rule of law. We must therefore depart briefly from formal legal analysis to express and explain our dismay. . . .
>
> When confronted with the awesome power of the criminal process, a client is never more in need of professional guidance and advocacy. . . . Any interference with the intimate relationship between attorney and client may do profound violence to the individual privacy of the client. Instead of receiving the protection that counsel can provide, the client unwittingly reveals his innermost thoughts to the unscrupulous. Such an invasion is unconscionable. The privacy between attorney and client is but an extension of the client's personal privacy. . . . The

fundamental need for secrecy between attorney and client is clear. The intentional invasion of that privacy is just as clearly violative of basic notions of procedural justice. . . . [I]t is important to note the existence of a number of criminal statutes which can apply to illegal eavesdropping, for they highlight the egregious character of the particular conduct that the record before us reveals. . . . The fact that the individuals responsible for invading defendant's privacy are law enforcement officials heightens our concern and sparks our sense of outrage.

*State v. Sugar*, 417 A.2d 474, 479-81 (N.J. 1980). We echo those sentiments and note that this sort of conduct tarnishes all who are in "the system," and while that is unfair, it is understandable.

[17] On appeal, the parties make several arguments concerning the admissibility of the officers' testimony. Based on the parties' arguments, we will address implications related to the Fifth Amendment, the Sixth Amendment's Confrontation Clause, the Sixth Amendment's right to counsel, the Fourth Amendment, and principles of prosecutorial misconduct.[2]

## I. *Fifth Amendment*

[18] The Fifth Amendment's Self-incrimination Clause provides that no person "shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. This protection extends to state cases by virtue of the Fourteenth Amendment. *Bleeke v. Lemmon*, 6 N.E.3d 907, 925 (Ind. 2014) (citing *Withrow v. Williams*, 507 U.S. 680, 688-89, 113 S. Ct. 1745, 1751 (1993)).

---

[2] The parties make no separate analysis of the Indiana Constitution in their arguments.

"[T]his prohibition not only permits a person to refuse to testify against himself at a criminal trial . . . but also 'privileges him not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings.'" *Id.* (quoting *Minnesota v. Murphy*, 465 U.S. 420, 426, 104 S. Ct. 1136, 1141 (1984)). The Fifth Amendment prohibits only compelled testimony that is incriminating. *Id.* (citing *Hiibel v. Sixth Judicial Dist. Ct. of Nev.*, 542 U.S. 177, 190, 124 S. Ct. 2451, 2460 (2004)). "If those two elements are present, a witness protected by the privilege may rightfully refuse to answer unless and until he is protected at least against the use of his compelled answers and evidence derived therefrom in any subsequent criminal case in which he is a defendant." *Id.*

[19] The parties do not dispute that the officers are protected by the Fifth Amendment from testifying regarding the eavesdropping. However, the State contends that the trial court's complete exclusion of the officers' testimony is an extreme sanction. The State argues that the officers should be allowed to give limited testimony to establish foundational requirements for evidence that they collected.

[20] Indiana courts have not addressed this exact issue. However, Indiana cases have held "it is improper for the prosecutor to call as a witness a codefendant when the prosecutor knows in advance that the witness will invoke the Fifth Amendment and refuse to testify." *Borders v. State*, 688 N.E.2d 874, 879 (Ind. 1997) (citing *Brown v. State*, 671 N.E.2d 401, 404-405 (Ind. 1996); *Tucker v.*

*State*, 534 N.E.2d 1110, 1111 (Ind. 1989); *Aubrey v. State*, 261 Ind. 692, 695-696, 310 N.E.2d 556, 559 (1974)); *see also State v. Eubanks*, 729 N.E.2d 201, 206-08 (Ind. Ct. App. 2000) (finding no fundamental error where the State called two co-conspirators knowing that they would invoke their Fifth Amendment right), *trans. denied*. The purpose of this rule was explained in *Brown*:

> The natural, even inevitable, inference which is raised in the jury's mind when an alleged accomplice refuses to testify is that the withheld testimony would be damaging, not only to the witness, but also to the defendant. Thus, the mere refusal to speak indelibly implants adverse inferences in the minds of the jurors and reaches them in a form not subject to cross examination. [The accomplice's] refusal to testify "may well have been the equivalent in the jury's mind of testimony." *Douglas v. Alabama* (1965), 380 U.S. 415, 419, 85 S. Ct. 1074, 1077, 13 L.Ed.2d 934, 937.

*Brown*, 671 N.E.2d at 404 (citing *Tucker*, 534 N.E.2d at 1110).

[21] Each of the cases referenced above involves the testimony of an accomplice. The testimony at issue here does not involve an accomplice and, thus, does not implicate the same adverse inferences toward the defendant. In fact, if the officers asserted their Fifth Amendment right on the stand, the inferences would seem, to us, to harm the State's case and the officers' credibility, not the defendant's case.

[22] Further, we note that, in *Eubanks*, we discussed and relied on *Namet v. U.S.*, 373 U.S. 179, 83 S. Ct. 1151 (1963). In *Namet*, two co-conspirators called to testify by the Government asserted their Fifth Amendment right as to some questions, and the defendant did not object. The United States Supreme Court found that the co-conspirators possessed "nonprivileged information that could be used to

corroborate the Government's case" and "[t]he Government has a right to put this evidence before the jury." *Namet*, 373 U.S. at 188, 83 S. Ct. at 1155. The Court considered whether the Government made "a conscious and flagrant attempt to build its case out of inferences arising from use of the testimonial privilege" and whether "inferences from a witness' refusal to answer added critical weight to the prosecution's case in a form not subject to cross-examination, and thus unfairly prejudiced the defendant." *Namet*, 373 U.S. at 186-87, 83 S. Ct. at 1154-55.[3]

---

[3] We also acknowledge the American Bar Association Criminal Justice Standards for the Prosecution Function, which provide:

> The prosecutor should not call a witness to testify in the presence of the jury, or require the defense to do so, when the prosecutor knows the witness will claim a valid privilege not to testify. If the prosecutor is unsure whether a particular witness will claim a privilege to not testify, the prosecutor should alert the court and defense counsel in advance and outside the presence of the jury.

ABA Criminal Justice Standards for the Prosecution Function, Standard 3-6.7(c) (4th ed.), available at http://www.americanbar.org/groups/criminal_justice/standards/ProsecutionFunctionFourthEdition.html. Similarly, the ABA Standards for Defense Function provide:

> Defense counsel should not call a witness in the presence of the jury when counsel knows the witness will claim a valid privilege not to testify. If defense counsel is unsure whether a particular witness will claim a privilege to not testify, counsel should alert the court and the prosecutor in advance and outside the presence of the jury.

ABA Criminal Justice Standards for the Defense Function, Standard 4-7.7(c) (4th ed.), available at http://www.americanbar.org/groups/criminal_justice/standards/DefenseFunctionFourthEdition.html.

Commentary is not currently available for these standards. However, the language of the prior edition of these standards is similar, and the commentary for the prior edition is instructive. Like the cases discussed above, the concern behind the standards is "the impossibility of effective cross-examination and the possibility that the jury may give inferences from the claim of privilege more weight than they deserve." ABA Criminal Justice Prosecution and Defense Function Standards, Commentary to Standard 3-5.7(c) (3rd ed.), available at http://www.americanbar.org/content/dam/aba/publications/criminal_justice_standards/prosecution_defense_function.authcheckdam.pdf.

Here too, the police officers presumably have relevant information on the investigation not subject to their assertion of their Fifth Amendment right. The police officers' refusal to testify does not add weight to the State's case or produce inferences that damage Taylor's defense. We cannot say that, based on these cases, the State should have been automatically prevented from calling the officers to testify at Taylor's trial due to the invocation of their Fifth Amendment right regarding the eavesdropping. Rather, further analysis of the officers' testimony is necessary to determine the admissibility of their testimony.

## II. Confrontation Clause

Taylor argues that his Sixth Amendment Confrontation Clause rights would be violated if the officers were permitted to testify at his trial. The Confrontation Clause of the Sixth Amendment states that "in all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." The Confrontation Clause "serves a primary interest of protecting the right of cross-examination and face-to-face confrontation at trial." *U.S. v. Zapata*, 871 F.2d 616, 623 (7th Cir. 1989) (citing *Douglas*, 380 U.S. at 418, 85 S. Ct. at 1076), *abrogated on other grounds by U.S. v. Gomez*, 736 F.3d 845 (7th Cir. 2014). "The confrontation clause, however, generally only 'guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense may wish.'" *Id.* (quoting *Delaware v. Fensterer*, 474 U.S. 15, 20, 106 S. Ct. 292, 295 (1985)). Sometimes, a defendant's confrontation right may be restricted by a witness'

invocation of his right against self-incrimination guaranteed by the Fifth Amendment. *Id.* "When such circumstances arise, the courts must watch vigilantly to ensure that the invocation did not 'effectively . . . emasculate the right of cross-examination itself.'" *Id.* (quoting *Fensterer*, 474 U.S. at 19, 106 S. Ct. at 294).

The Seventh Circuit has noted that, to prevent an "emasculation of the confrontation right," a district court may consider it "necessary to strike the direct testimony" of a nonresponding witness. *Id.* (citing *Dunbar v. Harris*, 612 F.2d 690, 692 (2nd Cir. 1979)). "'When a witness' refusal to answer prevents defendant from directly assailing the truth of the witness' testimony, the court should strike at least the relevant portion of the testimony.'" *Id.* (quoting *United States v. Humphrey*, 696 F.2d 72, 75 (8th Cir. 1982), *cert. denied*). However, "[w]hen a witness refuses to answer questions based on fifth amendment privilege, striking the witness's entire testimony is an extreme sanction." *Id.* at 624 (quoting *United States v. Lord*, 711 F.2d 887, 892 (9th Cir. 1983)). "As a corollary to the above principle, should the witness' refusal to answer 'relate only to collateral matters, such as credibility, the danger to the defendant is considerably less and the witness' testimony may not need to be stricken.'" *Id.* (quoting *Humphrey*, 696 F.2d at 75). "Therefore, a court's resolution of this issue should focus on whether the unanswered questions involved matters directly related to the scope of the direct examination or to collateral matters." *Id.* Matters of credibility are generally considered collateral. *Id.*

Similarly, the Fourth Circuit Court of Appeals has noted that "'[w]hen a prosecution witness cuts off cross-examination by invoking the fifth amendment privilege against self-incrimination, the criminal defendant's constitutional right of confrontation is directly implicated.'" *U.S. v. Curry*, 993 F.2d 43, 45 (4ᵗʰ Cir. 1993) (quoting *Lawson v. Murray*, 837 F.2d 653, 655 (4ᵗʰ Cir. 1988), *cert. denied*). "Nevertheless, striking the entire testimony is a drastic remedy and is not to be lightly done." *Id.* "In fact no action at all might be appropriate, or the court might strike only a portion of the testimony, if the fifth amendment privilege was invoked 'to avoid cross-examination on purely collateral matters.'" *Id.* (quoting *Lawson*, 837 F.2d at 656). "Striking all of the testimony might be the only appropriate remedy, however, if the refusal to answer frustrates the defendant's ability 'to test the credibility of the witness and the truthfulness of his earlier testimony.'" *Id.* (quoting *Lawson*, 837 F.2d at 656).

The Confrontation Clause is violated only when assertion of the privilege undermines the defendant's opportunity to test the truth of the witness' direct testimony. *Bagby v. Kuhlman*, 932 F.2d 131, 135 (2ⁿᵈ Cir. 1991), *cert. denied*. To reconcile a defendant's rights under the Confrontation Clause with a witness's assertion of his or her Fifth Amendment privilege, a court must initially consider: (1) whether the matter about which the witness refuses to testify is collateral to his or her direct testimony, and (2) whether the assertion of the privilege precludes inquiry into the details of his or her direct testimony. *Id.* "If the court determines that the privilege has been invoked with respect to a collateral matter, or that the invocation does not preclude inquiry into the

witness' direct testimony, then the defendant's right to cross-examine has not been impinged and no corrective action is necessary." *Id.* Conversely, the Sixth Amendment is violated when a witness asserts the privilege with respect to a non-collateral matter and the defendant is deprived of a meaningful opportunity to test the truth of the witness's direct testimony. *Id.* "The distinction between matters which are 'collateral' and those which are 'direct' is not precise or easy. *United States v. Seifert*, 648 F.2d 557, 561 (9th Cir. 1980). "It can be drawn only by reference to the particular facts of the particular case . . . ." *Id.* at 561-62.

[28] Our supreme court engaged in a similar analysis in *Clark v. State*, 480 N.E.2d 555, 559 (Ind. 1985). In *Clark*, a State's witness refused to answer some questions, and the defendant moved to strike his testimony. The trial court denied his motions, and on appeal, the defendant argued that he was denied his right to confront and cross-examine the witness. Our supreme court noted that "[t]he right to confront witnesses includes the right of full, adequate and effective cross-examination; it is fundamental and essential to a fair trial." *Clark*, 480 N.E.2d at 559. The court concluded that the defendant was able to conduct a "rigorous, thorough and lengthy cross-examination," that the unanswered questions focused on the witness's credibility and were "peripheral," and that the witness's credibility was further diminished when the trial court held him in contempt. *Id.* The court found that the defendant was not denied his right to full, adequate, and effective cross-examination. *Id.*

[29] The trial court here made no analysis of whether the officers' unanswered questions would relate to a "collateral matter." Taylor acknowledges these cases, which require consideration of whether the unanswered questions relate to a collateral matter, but Taylor argues there is no way to know whether the unanswered questions concern a collateral matter because he does not know what the officers overheard. The State argues that it is premature to determine whether the officers' unanswered questions relate to collateral matters. We agree.

[30] Although the trial court found that the eavesdropping was "in all likelihood critical to [Taylor's] defense," we think it is premature and speculative to make that determination at this juncture of the proceedings. App. p. 227. The State asserts that the officers could be called to testify for limited, foundational purposes related to evidence that they collected, and that the trial court could "potentially order such limited testimony from the relevant witnesses—and thus avoid the extreme sanction." Appellant's Reply Br. p. 5. At this point in the prosecution, we do not know which officers will be needed to testify, the subject of each officer's direct testimony, and whether the eavesdropping will relate in any manner to their direct testimony or would be collateral. It is necessary that the trial court perform such an analysis of each officer's testimony. *See, e.g., Zapata*, 871 F.2d at 624-25 (holding that the witness's unanswered questions, which "were directed at [his] prior involvement in drug trafficking," did not "go to the exculpation of" the defendant and were collateral"); *United States v. Wilmore*, 381 F.3d 868, 873 (9th Cir. 2004) (holding that the witness's

unanswered questions were not collateral and the witness's testimony should have been stricken). We leave the exact manner in which the trial court conducts this analysis to the trial court's discretion. The trial court may, in its discretion, hold a separate hearing to perform this analysis.[4]

[31] Before addressing the other issues raised by the parties, we address Taylor's reliance on *State v. Sugar*, 417 A.2d 474 (1980), and *State v. Sugar*, 495 A.2d 90 (1985). In *Sugar*, the defendant was being investigated for the disappearance of his wife. Officers engaged in a questionable search of the defendant's property that led to the discovery of the victim's body and surreptitiously listened to two conversations between the defendant and his attorney, during which they learned information that led to the discovery of other incriminating evidence. In the first appeal, the New Jersey Supreme Court found that the "only appropriate remedy is exclusion of tainted witnesses and evidence . . . ." *Sugar*, 417 A.2d at 486. The trial court then conducted a trial but allowed one of the detectives at issue to testify. In the second appeal, the New Jersey Supreme Court clarified its earlier opinion and held: "as a matter of law, a person who actually participated in, attended, or was contemporaneously informed of the unlawful intercept must be deemed to have been tainted by his direct

---

[4] We note Indiana Code Section 35-37-3-1(b), which provides:

> If the prosecuting attorney has reason to believe that a witness will refuse to answer a question or produce an item during any criminal trial, the prosecuting attorney may submit the question or request to the trial court. The court shall hold a hearing to determine if the witness may refuse to answer the question or produce the item.

knowledge of the intercept; he is therefore disqualified to testify as a witness in defendant's prosecution." *Sugar*, 495 A.2d at 97. Thus, the New Jersey Supreme Court found that the trial court erred by allowing one of the detectives at issue to testify. Further, the court noted that the defendant was unable to effectively cross-examine the detective at issue. The detective's credibility was "sharply in issue," and he had "an obvious motive to lie," but cross-examining the detective regarding the overheard statement "would be unthinkable." *Id.* at 99.

[32] This is the appeal of a blanket exclusion order preventing all officers who participated in the eavesdropping from testifying about any matter in the case. While the conduct of these officers surely merits and warrants the sternest of disapproval from us, we recognize such an extreme remedy has not been generally approved. The United States Supreme Court has held that "Sixth Amendment remedies should be 'tailored to the injury suffered from the constitutional violation and should not unnecessarily infringe on competing interests.'" *Lafler v. Cooper*, 132 S. Ct. 1376, 1388 (2012) (quoting *United States v. Morrison*, 449 U.S. 361, 364, 101 S. Ct. 665, 668 (1981)). "Thus, a remedy must neutralize the taint of a constitutional violation while at the same time not grant a windfall to the defendant or needlessly squander the considerable resources the State properly invested in the criminal prosecution." *Id.* at 1388-89 (internal citations and quotations omitted). We believe that the common sense and legally tenable approach is to continue with the process we have outlined. The State must demonstrate an independent basis for each piece of evidence. Thus,

the admissibility questions are in the purview of the trial court where they most appropriately belong. The trial court is also tasked with analyzing whether the officers' unanswered questions relate to collateral matters.

### III. Right to Counsel

[33] Taylor also argues that the trial court's exclusion of the officers' testimony is supported by his Sixth Amendment right to counsel. The Sixth Amendment guarantees all criminal defendants the right "to have the assistance of counsel for his defense." U.S. Const. amend. VI. In order to encourage clients to share information openly with their attorneys and thereby facilitate more effective assistance of counsel, common law courts created the attorney-client privilege. *Bassett v. State*, 895 N.E.2d 1201, 1206 (Ind. 2008), *cert. denied*. Although the Sixth Amendment right to counsel is distinguishable from the attorney-client privilege, the two concepts overlap. *Id.* "'The fundamental justification for the sixth amendment right to counsel is the presumed inability of a defendant to make informed choices about the preparation and conduct of his defense. Free two-way communication between client and attorney is essential if the professional assistance guaranteed by the sixth amendment is to be meaningful.'" *Id.* (quoting *United States v. Levy*, 577 F.2d 200, 209 (3rd Cir. 1978)).

[34] Our supreme court has held that "[t]here is no per se rule that every intrusion by the prosecution into the relationship between a criminal defendant and his attorney constitutes a Sixth Amendment violation." *Malinski v. State*, 794 N.E.2d 1071, 1081 (Ind. 2003) (citing *Weatherford v. Bursey*, 429 U.S. 545, 550-

51, 97 S. Ct. 837, 841 (1977)).  "Rather, some showing of prejudice is a necessary element of a Sixth Amendment claim based on an invasion of the attorney-client relationship."  *Id.* (citing *United States v. Chavez*, 902 F.2d 259, 267 (4ᵗʰ Cir. 1990)).  "In cases of Sixth Amendment violations, 'absent demonstrable prejudice, or substantial threat thereof, dismissal of the indictment is plainly inappropriate, even though the violation may have been deliberate.'"  *Id.* (quoting *Morrison*, 449 U.S. at 365, 101 S. Ct. at 668).

[35]  "Prejudice can manifest itself in several ways."  *United States v. Irwin*, 612 F.2d 1182, 1186-87 (9ᵗʰ Cir. 1980).  "It results when evidence gained through the interference is used against the defendant at trial."  *Id.*  "It also can result from the prosecution's use of confidential information pertaining to the defense plans and strategy, from government influence which destroys the defendant's confidence in his attorney, and from other actions designed to give the prosecution an unfair advantage at trial."  *Id.* (footnote omitted).

[36]  Taylor concedes that he must show prejudice.  He argues that "the improperly overheard communications between Taylor and Payne included substantive facts and defense strategy."  Appellee's Br. p. 22.  According to Taylor, he "was disadvantaged and prejudiced by those officers who were privy to his privileged conversations because of their ability to formulate answers to anticipated questions and potential [sic] shade their investigation and testimony to meet expected defenses."  *Id.*

[37]     Taylor relies on our supreme court's decision in *Malinski*. There, detectives photocopied the defendant's documents while he was in jail. The trial court found that the documents contained some details of the defendant's defense but that they did not contain "any major revelations of defense strategy from which the State would gain significant advantage. . . ." *Malinski*, 794 N.E.2d at 1081. The trial court prohibited the State from using the copied documents during the trial, including cross-examination of the defendant. On appeal, our supreme court held:

> Malinski contends that he was prejudiced by the detectives' actions in photocopying his legal documents because the information contained in the documents led to the discovery of a hidden room (also called the "porn room") in the attic of his house and several Polaroid photos of Lori in bondage. He notes the prosecution used this evidence at trial and thus, gave them an advantage. We conclude that the trial court's sanction for discovery violation was adequate to shield Malinski from any prejudice.
>
> There is dispute about how the documents were packaged, one that may reflect on whether they could be considered "legal" or not. Nevertheless, in reviewing the documents in question, we agree with the trial court's assessment that they would not have revealed anything major that would have given the prosecution a significant advantage in the investigation. We also agree with the State's contention that based on the evidence, the hidden room and the photographs could have been discovered by means other than the copied documents.

*Id.* at 1081. The court concluded that the State did not "gain any significant advantage" from copying the defendant's documents. *Id.* at 1082. "The trial court made sure that the documents themselves were not used at trial for any purpose and Malinski appears not to have suffered any other demonstrable prejudice." *Id.* "The trial court's remedy seems to have innoculated Malinski

from any governmental misconduct." *Id.* The court concluded that "[a]bsent a demonstrable or substantial threat of prejudice on the criminal proceedings, there is no basis for imposing a new trial as a remedy." *Id.*

[38] Our supreme court in *Malinski* did not require the exclusion of all testimony by the police officers that copied the defendant's documents. Rather, the court approved the trial court's remedy of excluding the documents for any purpose. Similarly, the trial court here has already suppressed the gun, which was admittedly gained through the eavesdropping. The trial court also required the State to provide an independent basis for each piece of evidence discovered after the eavesdropping. As for Taylor's assertion that the officers heard his defense strategy, we recognize that Taylor is placed in an unusual position. The officers who eavesdropped on the conversation with his attorney have asserted their Fifth Amendment right and will not discuss the eavesdropping. Taylor's attorney clearly knows the substance of their conversation, but he is bound by attorney-client privilege. Taylor's attorney testified at the suppression hearing that they discussed "all aspects of both the case and his defense." Tr. p. 269. However, Taylor has not, at this point, demonstrated prejudice, and we cannot presume prejudice from the eavesdropping.[5] We find no legal support, at this

---

[5] In the dissent, Judge May advocates applying a presumption of prejudice. Courts are divided regarding whether such a presumption of prejudice should be applied. Our supreme court did not apply a presumption of prejudice in *Malinski*. Moreover, in *Ingram v. State*, 760 N.E.2d 615, 619 (Ind. Ct. App. 2001), we acknowledged that courts were split on the issue and held: "[I]n this case, we need not decide whether the trial court applied the appropriate burden of persuasion. Even assuming arguendo that requiring the State to rebut the presumption of prejudice was the appropriate burden of persuasion, the trial court did not abuse its discretion in denying Ingram's motion to dismiss." Consequently, *Ingram* is not determinative of the issue.

time, for Taylor's argument that the officers' testimony should also be excluded based on Taylor's Sixth Amendment right to counsel.

### IV. Fourth Amendment

[39] Next, Taylor argues that the trial court's exclusion of the officers' testimony is sustainable based on the Fourth Amendment. The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const., amend. IV. To encourage compliance with the Fourth Amendment, the evidence seized in violation of the Constitution must be excluded at trial unless an exception to this "exclusionary rule" applies. *Shotts v. State*, 925 N.E.2d 719, 723 (Ind. 2010). Under the fruit of the poisonous tree doctrine, which is an extension of the exclusionary rule, evidence directly obtained by the illegal search or seizure as well as evidence derivatively gained as a result of information learned or leads obtained during that same search or seizure is barred. *Clark v. State*, 994 N.E.2d 252, 266 (Ind. 2013).

[40] We note that the trial court has already excluded the gun, which the State conceded should be suppressed. Moreover, the trial court is requiring the State to demonstrate an independent basis for each piece of evidence discovered after the eavesdropping. The officers' testimony was not excluded based on an illegal search or the exclusionary rule. Rather, the trial court excluded the

officers' testimony based on their assertion of their Fifth Amendment right to avoid self-incrimination and Taylor's Sixth Amendment rights. The officers here clearly have information that is not subject to the exclusionary rule, i.e., evidence discovered prior to the eavesdropping and evidence for which an independent basis has been established. Taylor cites no relevant authority that the officers' testimony should be excluded based solely on the Fourth Amendment. This argument fails.

## IV. *Prosecutorial Misconduct*

Next, Taylor argues that the trial court's exclusion of the officers' testimony is sustainable based on the principles of prosecutorial misconduct. In general, we evaluate a properly preserved claim of prosecutorial misconduct using a two-step analysis. *Castillo v. State*, 974 N.E.2d 458, 468 (Ind. 2012). "We first determine whether misconduct occurred, then, if there was misconduct, we assess 'whether the misconduct, under all of the circumstances, placed the defendant in a position of grave peril to which he or she would not have been subjected' otherwise." *Id.* (quoting *Cooper v. State*, 854 N.E.2d 831, 835 (Ind. 2006)). "The gravity of peril is measured by the probable persuasive effect of the misconduct on the jury's decision rather than the degree of impropriety of the conduct." *Ryan v. State*, 9 N.E.3d 663, 667 (Ind. 2014). To preserve a claim of prosecutorial misconduct, the defendant must ask the trial court, at the time the misconduct occurs, to admonish the jury or move for a mistrial if admonishment is inadequate. *Castillo*, 974 N.E.2d at 468. Failure to request an

admonishment or a mistrial waives the claim, unless the defendant can demonstrate that the misconduct rises to the level of fundamental error. *Id.*

[42] Although we are extremely troubled by the facts of this situation, it is clear that Neary did advise Taylor's lawyer that the incident occurred, attempted to curb the police conduct, and self-reported his actions to the Disciplinary Commission. According to Taylor, Neary's actions in eavesdropping on Taylor's conversation with his attorney warrant the exclusion of the officers' testimony. However, Taylor cites no relevant authority to support this argument, and we do not find the argument persuasive.[6] Neary's alleged misconduct and the officers' assertion of their Fifth Amendment rights are different circumstances, subject to different standards. Further, under the prosecutorial misconduct standard used in Indiana, Taylor must demonstrate that the alleged misconduct subjected him to grave peril, which is measured by the probable persuasive effect of the misconduct on the jury's decision. *See Ryan*, 9 N.E.3d at 667. Taylor must also object, request an admonishment, and request a mistrial. A prosecutorial misconduct claim is premature at this time.

---

[6] Taylor cites *State v. Quattlebaum*, 527 S.E.2d 105 (S.C. 2000), where the South Carolina Supreme Court reversed a conviction and ordered a new trial where a deputy prosecutor had participated in videotaping the defendant's conversation with his attorney. The Court disqualified the Eleventh Circuit Solicitor's Office from prosecuting the defendant at his new trial. *Quattlebaum* did not involve the exclusion of officers' testimony due to prosecutorial misconduct.

# Conclusion

[43] We affirm the portions of the trial court's suppression order not challenged by the State. We disagree with the trial court's automatic exclusion of the officers that asserted their Fifth Amendment right during depositions and at the suppression hearing. Rather, based on Taylor's Sixth Amendment right to confrontation, the trial court must determine whether each officer's unanswered questions are collateral to matters that he testifies to on direct examination. The trial court's exclusion of the officers' testimony is also not sustainable at this time based on Taylor's Sixth Amendment right to counsel, the Fourth Amendment, or the principles of prosecutorial misconduct. We remand for the trial court to conduct an analysis of each officer's testimony as discussed in this opinion. We affirm in part, reverse in part, and remand.

[44] Affirmed in part, reversed in part, and remanded.

[45] Pyle, J., concurs.

[46] May, J., dissents with separate opinion.

Court of Appeals Cause No.
46A04-1407-CR-316

**May, Judge, dissenting.**

[47]     I believe the trial court correctly excluded all testimony by the police officers because the Sixth Amendment violation arising from the prosecution's interference with the relationship between Taylor and his counsel requires it.  I must therefore respectfully dissent.

[48]     The majority notes, in addressing Taylor's Sixth Amendment argument, "Taylor has not, at this point, demonstrated prejudice," (slip op. at 24), and then states, without citation to authority, "we cannot presume prejudice from the eavesdropping."  (*Id.*)  I would decline to so hold, because I believe we can presume prejudice, without Taylor having an obligation to demonstrate it.

[49]     The State offers no authority to directly support the premise prejudice may not be presumed from egregious police behavior like that in the case before us, and I am aware of no such holding in any Indiana decision.

[50]     In fact, at least one decision from this court suggests prejudice is presumed.  *See Ingram v. State*, 760 N.E.2d 615, 618 (Ind. Ct. App. 2001) ("The sole issue is whether the trial court abused its discretion by finding that the State *rebutted the*

*presumption of prejudice* to Ingram resulting from the police videotaping and audiotaping private conversations between Ingram and his attorney.") (emphasis added), *trans. denied*. In *Ingram*, we said:

> Neither Ingram nor the State differentiates between prejudice resulting from the recording of the attorney-client conferences and prejudice resulting from the taping of the interview with the detectives. Much of the prejudice alleged by Ingram does not specifically result from the taping of the attorney-client conferences. Regardless, the State demonstrated sufficient evidence *to rebut the presumption of prejudice*.

*Id*. at 620 (emphasis added).

[51] Other jurisdictions have agreed prejudice may be presumed.[7] I believe we may, and should, presume prejudice from the egregious behavior in the case before us, which presumption the State has not rebutted.

[52] The Washington Supreme Court addressed a similar situation in *State v. Fuentes*, 318 P.3d 257 (Wash. 2014). It noted a defendant's constitutional right to the assistance of counsel "unquestionably includes the right to confer privately with

---

[7] Some courts have determined that in a situation like the one before us, no prejudice need be shown. *See, e.g., Graddick v. State*, 408 So. 2d 533, 546 (Ala. Crim. App. 1981) *writ quashed*, 408 So. 2d 548 (Ala. 1982), *cert denied sub nom. Alabama v. Graddick*, 458 U.S. 1106 (1982):
> In the case at bar it is impossible to ascertain the exact amount of tactical advantage the State gained from the Williams intrusion into the Beck-appellant conversation. Defense strategy was definitely discussed and damaging information to appellant's case came out during the meeting. To what extent appellant was actually prejudiced by the intrusion can never be known with certainty. However, that question need not be decided in determining a violation of Sixth Amendment rights. In accordance with [*United States v. Levy*, 577 F.2d 200, 209 (3rd Cir. 1978)], *our inquiry into prejudice must stop at the point where attorney-client confidences are actually disclosed to the government enforcement agencies responsible for investigating and prosecuting the case.*

(Emphasis added.) *And see generally* Robin Cheryl Miller, Annotation, *Propriety of Governmental Eavesdropping on Communications between Accused and His Attorney*, 44 A.L.R.4th 841 (1986).

his or her attorney," *id*. at 262, and that in a prior decision prejudice had been presumed from a sheriff's eavesdropping on conversations between a defendant and his attorney during trial. *Id*. (citing *State v. Cory,* 382 P.2d 1019 (Wash. 1963)).[8]

[53] The *Fuentes* Court went on to determine the presumption of prejudice was, however, rebuttable: "[w]hile eavesdropping on attorney-client conversations is an egregious violation of a defendant's constitutional rights and cannot be permitted, there are rare circumstances where there is no possibility of prejudice to the defendant." *Id*.

[54] When there is such police eavesdropping, the *Fuentes* Court determined, the State has the burden to show beyond a reasonable doubt that the defendant was not prejudiced:

> The constitutional right to privately communicate with an attorney is a foundational right. We must hold the State to the highest burden of proof to ensure that it is protected . . . . The State is the party that improperly intruded on attorney-client conversations and it must prove that its wrongful actions did not result in prejudice to the defendant. Further, the defendant is hardly in a position to show prejudice when only the State knows what was done with the information gleaned from the eavesdropping. The proper standard the trial court must apply is proof beyond a reasonable doubt with the burden on the State.

*Id*.

---

[8] The *Cory* Court determined "the shocking and unpardonable conduct of the sheriff's officers, in eavesdropping upon the private consultations between the defendant and his attorney, and thus depriving him of its [sic] right to effective counsel, vitiates the whole proceeding. The judgment and sentence must be set aside and the charges dismissed." 382 P.2d at 1023.

[55] The record does not reflect the State rebutted the presumption Taylor was prejudiced. As in *Fuentes*, Taylor "is hardly in a position to show prejudice when only the State knows what was done with the information gleaned from the eavesdropping." *Id*. "The right to have the assistance of counsel is too fundamental and absolute to allow courts to indulge in nice calculations as to the amount of prejudice arising from its denial." *Glasser v. United States*, 315 U.S. 60, 76 (1942), *reh'g denied*.[9]

[56] The State represented before the trial court that it asked the officers whether the evidence collected after the eavesdropping "was obtained due to a conversation between [Taylor] and his attorney or as a result of information that may have been obtained through a conversation between [Taylor] and his attorney," (Tr. at 299), and that there was an independent source for every piece of such evidence. But the trial court correctly noted that in light of the officers' invocation of the Fifth Amendment, Taylor could not obtain any information about what the police overheard, who was listening, who was told about the conversation, and what the police and prosecutor did with the information they obtained from the eavesdropping.

[57] I believe the State was obliged to show beyond a reasonable doubt that Taylor was not prejudiced, and it did not do so. The trial court properly barred the

---

[9] *Glasser* was superseded by rule on other grounds: "[t]o the extent that *Glasser* meant that courts could not look to the hearsay statements themselves for any purpose, it has clearly been superseded by Rule 104(a)." *Bourjaily v. United States*, 483 U.S. 171, 181 (1987).

officers who asserted their Fifth Amendment rights from testifying at trial, and I would therefore affirm.